GEORGE M. WOODRUFF AND OTHERS, COMMISSIONERS, *vs.*
JULIUS CATLIN.

THE SAME *vs.* MARY GRAHAM.

Hartford District, Oct. T., 1886. PARK, C. J., CARPENTER, PARDEE,
LOOMIS and GRANGER, Js.

The tracks of two railroads crossing a city street at grade and the public
safety requiring a change, the General Assembly passed an act appointing a board of commissioners with power to adopt some plan for
bridging either the street or the tracks and altering the location of
either so far as necessary, in its own name to take lands necessary for
the purpose, to procure the appointment by the court of appraisers of
the property taken, and to apportion the expense among the corporations interested; the property taken to vest in the particular corporation occupying it for its highway or track, and to be paid for before
being occupied, and the award of damages, when recorded in court,
to have the effect of a judgment. Held— ·

1. That the word "taken," in the constitutional provision that "private
property shall not be taken for public use without just compensation
therefor," means the actual assumption by the party taking it of exclusive possession, at the termination and as the result of judicial proceedings.

2. That the act in question sufficiently secured compensation to the owner
of the land taken in making actual payment of the assessed damages
a prerequisite to the passing of any right to it to the corporation taking it.

3. That the legislature had power to give to its commissioners a standing
in court to ask that land might be subjected to the use of the different
corporations interested, and could impose upon each the same obligation in relation thereto that would have resulted from their asking for
and receiving the land in their own names.

4. That in apportioning the expense to be incurred by the taking of land
the commissioners had power to require either of the corporations to
pay to either of the others a certain portion of the sum paid by the
latter for land taken; and a requirement that the city should pay a
portion of the damages assessed for land taken by the railroad companies would not be in conflict with the constitutional prohibition of
municipal aid to railroads.

[Argued October 13th—decided November 23d, 1886.]

APPLICATIONS by commissioners appointed by the General Assembly, to Judge *Carpenter*, a judge of the Superior
Court, for the appointment of appraisers of land taken for

an alteration of a street and railroad tracks in the city of Hartford.

There were two applications with regard to land of the defendant Julius Catlin, one pertaining to land taken for the use of The New York & New England Railroad Company and the other to land taken for the use of The New York, New Haven & Hartford Railroad Company. There were also two applications with regard to land of the defendant Mary Graham, one pertaining to land taken for the use of The New York & New England Railroad Company and the other for land taken for the use of the city. All the cases were heard together as one case, both below and in this court.

The resolutions of the General Assembly upon which the proceedings were founded are given in full in the opinion of the court. By them the applicants were appointed a board of commissioners with power to adopt some plan for the removal of a dangerous nuisance in the city of Hartford, consisting of the crossing of Asylum street, in the heart of the city, by the tracks of the two railroads mentioned at grade. The commissioners were authorized in their own name to take lands necessary for the purpose, to procure the appointment by a judge of the Superior Court of appraisers of the land so taken, and to apportion the expense among the three corporations interested. The land taken was to vest in the particular corporation occupying it for a highway or for its railroad tracks, and the damages assessed in favor of the owner of land so taken were to be paid before the land was occupied, and the award of damages, when recorded in court, was to have the effect of a judgment.

The defendants demurred to all the applications. That of the defendant Catlin was upon the following grounds :—

1. Because the legislature has not the power to oblige the city of Hartford to pay for lands taken by said railroad companies for railroad purposes, or for expenses incurred by said companies in changing their grades, or other similar work, as the same is contrary to the twenty-fifth amendment to the constitution of this state, and also to the fourteenth

amendment to the Constitution of the United States, and the eleventh section of the bill of rights of the constitution of this state.

2. Because if the legislature has such power, it cannot delegate it to the persons appointed commissioners.

3. Because the legislature cannot delegate to the commissioners the power proposed to be given to them by said resolutions, to decide what plan shall be adopted for a bridge, nor what lands shall be taken for said railroads, and what amount the city shall pay therefor, without the consent of said city.

4. Because no sufficient provision is made for the payment of any damages which may be assessed for the taking of the land to be taken, nor how much shall be paid by said railroad, or the city, or which one shall pay for the same.

5. Because there is in said resolutions no provision obliging said railroad companies to take the lands hereby proposed to be taken, and to lay their tracks thereon, or to pay for the same, except so far as it is provided that it shall have the effect of a judgment; but it does not provide that it shall be a judgment of any court, or that any court or other authority may issue execution; so that said provision is inoperative, and no other provision for payment is made.

6. That a judgment against the New York & New England Railroad Company would be valueless, as said corporation has no property in this state, not incumbered, upon which an execution could be levied.

The grounds of the demurrer of the defendant Mary Graham were stated as follows :—

1. Said resolutions provide, *inter alia*, for the taking of land for railroad purposes, the title to which shall vest in certain railroad corporations, and that the city of Hartford shall pay to said railroad companies a portion of the damages appraised for said land so taken by them, and of the expenses and charges connected with the changing of the railroad tracks from their present location, all of which is contrary to the provisions of the twenty-fifth amendment to the constitution of the state of Connecticut.

2. In and by said resolutions the legislature has attempted to delegate to a commission the arbitrary power of deciding what land shall be taken for the purposes named therein, and of compelling certain municipal and railroad corporations, *in invitum*, to take said land and pay therefor, without any voice in the selection of said lands.

3. In and by said resolutions the legislature has attempted to give to the applicants the right to condemn and take private property for a public use, but compels the owner to look to other parties for the compensation therefor.

4. Said resolutions do not provide that any party shall pay for the land when condemned, nor do they give to the owner of the land taken any legal means of enforcing payment therefor; and even if they do, a judgment against the New York & New England Railroad Company could not be satisfied in this state, as all its property is covered by large mortgages.

5. Said resolutions only authorize, if at all, a taking of land for one single and entire public use, but the applicants are now seeking in and by these proceedings, and others pending before the same judge, both against this respondent and also against other parties, to condemn and take adjoining lands under the alleged authority of these same resolutions of the General Assembly, for three distinct public uses, while it may be so that land condemned for two of said uses may be taken and paid for by the parties for whose benefit said land is condemned, and yet the land taken for the other use may not be taken, and so the consummation of the whole purpose contemplated by said resolutions be impossible.

The demurrers were overruled by the judge and the applications held sufficient. The defendants appealed to this court.

*C. E. Perkins* and *C. E. Gross*, in support of the demurrers.

*First.* These proceedings are only for the appointment of appraisers to estimate the value of the land taken, but if the

resolutions are unconstitutional they are wholly void, and there is no authority for the present proceeding. It is well settled that if a material and essential part of an act is unconstitutional the whole act is void. Cooley on Const. Lim., 177; *State* v. *Wheeler*, 25 Conn., 299. Here the part of the resolutions which we claim to be unconstitutional is clearly a vital part of them.

*Second.* These resolutions, in compelling the city to pay the railroad companies such sum, toward the expenses of altering the location and grade of their tracks, as the commissioners may fix, is unconstitutional and void. The question is not whether the state can give money which it raises by general taxation to a railroad, nor whether it can authorize a city to use moneys which it raises by taxation for other than local purposes, but whether the legislature can oblige the tax-payers of a city to give their money to a railroad company to help it pay for lands and new tracks, without their consent. We say it cannot.

1. The twenty-fifth amendment of the state constitution prohibits any city from making any " donation " to any railroad company. The object of the amendment was to prevent any kind of assistance from cities to railroad companies, the prohibition including the subscribing for stock, the purchase of bonds, and the loaning of credit, as well as the making of a donation. But by these resolutions the railroad companies are to take and own lands and the city is to give the companies a part of the money to pay for them. The city owed the railroads nothing. It has agreed to pay nothing. It has not even been asked if it is willing to pay. It is a forced gift—a " benevolence " as it used to be called in England. It is no less a mere donation that the legislature orders it. *Taylor* v. *Porter*, 4 Hill, 140; *Wilkesbarre Hospital* v. *Luzerne County*, 84 Penn. St., 55; *Taylor* v. *Commissioners of Ross County*, 23 Ohio St., 22; *Wyscaver* v. *Atkinson*, 37 id., 80, 97; *Mosher* v. *Ackley School District*, 44 Iowa, 122.

2. It is not within the recognized limits of legislation for a legislature to pass an act compelling a city to give money

to a railroad company. *People* v. *Batchellor*, 53 N. York, 128. This is a leading case on the question. The legislature passed an act *requiring* a town to subscribe to the stock of a railroad company and pay for it in its bonds, and the court held that this was beyond the power of the legislature. It was claimed that the state had the power to oblige a town to make public highways, that a railroad was in a sense a public highway, and that therefore the state could make a town assist in building a railroad; but the court said that though railroad companies are *quasi* public corporations, and railroads *quasi* public highways, sufficiently so to allow the power of eminent domain to be exercised in their behalf, yet they were not so in the sense that highways in a town were. " The towns through which the latter run may be compelled to keep them in repair for the common use of the public." But a railroad, though partly public, is also partly private. They are sufficiently public to warrant the legislature in *authorizing* towns to assist them, but not so much so as to allow them to be *forced* to contribute. The court also held that towns could not be forced to expend the money of their tax-payers for any other purposes than those public municipal purposes for which they were organized, nor to make contracts for any other purpose. The money of the town or its tax-payers was their property, and could be taken or obliged to be expended only for certain public local purposes. Numerous other authorities are to the same effect. *Hoagland* v. *Sacramento*, 52 Cal., 142; *Tyson* v. *Halifax*, 51 Penn. St., 9; *Hasbrouck* v. *Milwaukee*, 13 Wis., 37; *Mills* v. *Charleton*, 29 id., 400; *People* v. *Chicago*, 51 Ill., 17; *People* v. *Common Council of Detroit*, 28 Mich., 228; *People* v. *Haws*, 37 Barb., 440; *Atkins* v. *Randolph*, 31 Verm., 226; *Brunswick* v. *Litchfield*, 2 Maine, 32; *Bowdoinham* v. *Richmond*, 6 id., 115; *Hampshire* v. *Franklin*, 16 Mass., 84; *Lowell* v. *Boston*, 111 id., 454; *Berlin* v. *New Britain*, 9 Conn., 175; *Weismer* v. *Village of Douglas*, 64 N. York, 91; *Loan Asso.* v. *Topeka*, 20 Wall., 655; Cooley's Const. Lim., 230; 1 Dillon Municp. Corp., §§ 10a, 11, 12.

3. It is taking property without due process of law and without providing for the payment of just compensation, as required by our state constitution. It is the general law that a statute or resolution cannot authorize the exercise of eminent domain, unless it provides in express terms for the certain payment of compensation. *Thatcher* v. *Dartmouth Bridge Co.*, 18 Pick., 501; *In re Mt. Washington Road Co.*, 35 N. Hamp., 134; *Eastman* v. *Amoskeag Co.*, 44 id., 143; *People* v. *Haines*, 49 N. York, 590. The constitutional provision requiring compensation does not execute itself. Mills on Eminent Domain, § 128; *Watson* v. *Trustees of Pleasant Township*, 21 Ohio St., 667; *Boston & Lowell R. R.* v. *Salem & Lowell R. R.*, 2 Gray, 1; *Gray* v. *St. Paul, &c. R. R. Co.*, 13 Minn., 315. This is also the rule as laid down by this court. *Hooker* v. *New Haven & Northampton Co.*, 14 Conn., 160; *Denslow* v. *Same*, 16 id., 103; *Clark* v. *Saybrook*, 21 id., 324. Compensation must be made either by actual payment, or by providing an ample fund out of which the right to receive the damages allowed shall be *certain*. The compensation, then, which our constitution requires must be certain. We then ask what is compensation? A mere judgment is held not to be compensation. Mills on Eminent Domain, § 131; *Powers* v. *Armstrong*, 19 Geo., 427. Neither is the right to sue compensation. "The constitutional provision requiring just compensation is not satisfied by imposing upon the owner the burden of pursuing an expensive remedy, and leaving him exposed to the risk of obtaining judgment and satisfaction." Mills on Eminent Domain, § 132; *In re Mt. Washington R. R. Co.*, 35 N. Hamp., 134; *Avery* v. *Fox*, 1 Abbott U. S. R., 254. Nothing except money, actually paid or deposited, from which deposit payment is certain, will satisfy the law. *Butler* v. *Sewer Commissioners*, 39 N. Jer. Law, 665; Cooley on Const. Lim., 559. Do these resolutions under which these proceedings are instituted provide for any such "just compensation" as the law requires? If not, they are unconstitutional and void, and these proceedings must be dismissed. Three, but practically only two, resolutions have been

passed by the legislature looking to the execution of the work contemplated—that is, bridging the railroad grade crossing on Asylum street; one approved April 4th, 1884, which was slightly amended March 26th, 1885, and the other approved February 19th, 1886. By the first, the New York, New Haven & Hartford Railroad Company and the New York & New England Company are enjoined by the mandatory order of the legislature to execute the work. In case they cannot agree with the city as to the manner of the execution, a commission therein appointed is empowered and instructed on behalf of the state to decide and order as to the manner in which the work shall be done by the railroad companies and the city of Hartford, with power to apply to any court of competent jurisdiction to procure the enforcement and execution of its orders. In this resolution there are two provisions for the taking of private property, as follows: "*Sec.* 3. Said railroad companies and said city may jointly or severally take any lands which they shall deem necessary to properly carry out said improvement, in the same manner as is now provided by the statute for taking land for railroad purposes." "*Sec.* 6. In case the party by whom the changes are to be made or work done cannot agree with the owner of any land or other property required to be removed or taken under the orders of said commissioners, the same, including property already appropriated or used for railroad purposes, may be removed or taken, and the damages assessed in the same manner as is now provided in case of land taken by railroad companies for railroad purposes." By the resolution of 1884, and as amended in 1885, it will readily be seen that the commission has no power to *execute* the work. Its powers are *quasi* judicial, entirely directory and supervisory. The legislature has delegated to it merely the power to decide what shall be done and by whom, with the additional power of compelling through the courts the execution of its decisions, by the parties whom the commission order to do the work. If land is necessary, the courts by mandamus upon the application of the commission can compel the railroad companies, or

the city, creatures of the legislature, to proceed in accordance with the statute and condemn and pay for the land taken. Thus far the rights of the property owner are preserved. But by the resolution of 1886 the powers of the commission are very much changed and enlarged. The commission is now made an arm of the government, and authorized, as agents of the state, to execute the work, or at least a portion of it. The legislature had undoubtedly the power to appoint a " board of commissioners for the state " to condemn and take private property for a public use, provided the act was in other respects sufficient and constitutional. In the exercise of this power the commissioners are the servants and agents of the state. Mills on Eminent Domain, § 64; *Brimmer* v. *Boston*, 102 Mass., 19. They are not the agents of the railroad companies nor of the city. As against these corporations the proceedings are *in invitum*. The proceedings are not instituted by the railroad companies, nor by the city of Hartford, nor by their agents. The legislature had no power to appoint *agents* for these corporations without their consent. It can only compel the corporations to abide by and adopt the work done by the commissioners· for their use and benefit, so called. The legislature could not appoint these commissioners as agents of the two railroads and then authorize them as the agents of one railroad to take the property of the other. " The legislature cannot compel one man to sell to another." *Todd* v. *Austin*, 34 Conn., 91. The commissioners are the agents or servants of the state, to whom is delegated the power which is to be exercised by them "for the state." These agents are authorized to condemn and take private property, for a public use, but there is no provision that they or the state shall make "just compensation." True, the declaration is made that the taking is for the use and benefit of certain of the defendants, but that is only the ulterior purpose. The title is not to vest in the railroad company until that company pays for the land. Suppose the company refuses to pay, and the courts decide hereafter not to compel it to pay. This only shows that these pro-

ceedings are not by or on behalf of the railroad companies. They are brought by a commission for the state, for a public use. The ulterior purpose to which the use may be devoted, and the fact that the cost may hereafter be collected from parties benefited, are both immaterial at present. The only cases in which the right of eminent domain can be exercised are those, in which either the sovereign proceeds directly through its own officials or through a commission, or in which public corporations, or those which are sometimes called *quasi* public corporations, are permitted through a delegation of power to take land for their own and the public use. In no one of these cases has a court ever upheld the power to exercise the right unless provision for compensation was coupled with the power; with this exception only, that in a few cases, where the state or a municipal corporation has sought to take the land, the courts have said that the presumption was, *in the absence of any provision for payment,* that the state or municipal corporation would pay, and the remedy of the individual was certain. Mills on Eminent Domain, § 126; Cooley on Const. Lim., 560–562. But in these resolutions we have an attempt to provide for compensation. Under the 3d section of the resolution of 1884, the corporation have the right to proceed and condemn the land, and if they do, the general law obliges them to pay. Under the 5th and 6th sections of the same resolution the commission had the right to compel the railroad companies to bring such proceedings. But under the resolution of 1886 they institute these proceedings in their own names. While the commission is authorized to do this, the owner is obliged to look to other parties for his compensation. The commission is authorized in its own name to institute and prosecute proceedings *for the taking of* and *appraisal of damages for* any land which may be necessary. *The proceedings for appraising damages* to persons whose property is condemned *are to be in the same manner and form* as those prescribed by law for appraising damages for taking land for railroad purposes, *excepting as modified by this resolution.* Now, what are these modifica-

tions? They appear in section two, and also in the fact that the resolution does not require compensation to be made when the land is condemned, by the party taking. Let us examine the provisions of the first section. " All property *taken* under said proceedings shall be deemed to be *taken* by the party for whose benefit the proceedings are had," (which may not be determined for some time,) "and upon their completion *and the payment* of the damages, the right, title, and interest *so taken*" (previously by the commissioners) "shall, by virtue of said proceedings, then vest immediately and directly in the party" so paying, *etc.* In other words, the commission is to condemn and take, and then by mandamus compel the railroad companies to pay for the same. If they do, the land previously taken by the commission and unpaid for up to this time, it is claimed, will then vest in the party paying therefor, but not until that time. Now we are not discussing the question *when* payment shall be made, but the question *whether any provision for certain payment is made.* The commissioners are not obliged to pay, and there is no mandatory provision requiring the railroads or the city to pay. Again, the provisions of section two are not like the provisions of the general railroad law, for the legislature has expressly modified them. Where shall the appraisal of damages be returned and recorded? Who can issue execution? Will such a judgment be recognized by any one anywhere? The New York & New England has a very large railroad mortgage upon its property, covering, by the decisions of this court, all its property necessary for the successful operation of the road. How can an execution against that railroad company be satisfied in this state? Will such a judgment, not being of any court, be recognized in Massachusetts? But this is the only provision for payment in the resolution, and it is not such a provision for "compensation" as the law requires. *Phifer* v. *Carolina Central R. R. Co.*, 72 N. Car., 433; *Hooker* v. *N. Haven & Northampton Co.*, 15 Conn., 326. The plaintiffs may answer that the railroad companies may voluntarily pay the damages appraised, and thus the

law will be satisfied. To this I reply that such guess-work will not make the provision for compensation *certain*, and the fact that the railroads are not joined as co-plaintiffs, but are made defendants, shows conclusively that they are hostile, and will not make voluntary payments. In closing we adopt the words of the court in its opinion in the case of *Butler* v. *Sewer Commissioners*, 39 N. Jer. Law, 673, decided in 1877 :—"I think the attempt to exercise such a power in this act is clearly inimical to the constitutional provision, and that the act does not provide a method of compensation within its purview and is therefore insufficient to support any proceedings for condemnation."

*H. C. Robinson* and *S. O. Prentice*, for the appellees.

PARDEE, J. These are two cases, argued together, of proceedings for the condemnation of land for railway and highway uses.

The New York, New Haven & Hartford Railroad and the New York & New England Railroad cross Asylum Street, a much used highway in the city of Hartford, at grade.

In 1885 the legislature of this state passed the following resolution :—"That a resolution of the General Assembly, approved April 4th, 1884, providing for a bridge at the railroad crossing at Asylum Street, Hartford, be amended by inserting in section one, in the fifth line, after the word 'railroads,' the words 'or for the carrying of said tracks, and structure therefor, over said Asylum Street,' and in section four, in the thirteenth line, by adding, after the word 'order,' the words 'the carrying of said tracks, and structure therefor, over said Asylum Street,' so that said sections, as amended, shall read as follows :—

"*Sec.* 1. The city of Hartford, the New York, New Haven & Hartford Railroad Company, and the New York & New England Railroad Company, shall construct a bridge, or other suitable structure, with proper approaches, so as to carry Asylum Street, in said city of Hartford, over the tracks of said railroads, or for the carrying of said tracks

and structure therefor over said Asylum Street, at or near their present intersection with said street.

" *Sec.* 4. If said city and said railroad companies shall not, within said period of three months, agree as aforesaid, and submit their said agreement in writing to the railroad commissioners, and obtain their approval thereto, then the railroad commissioners, Morgan G. Bulkley, and Henry C. Robinson, both of said Hartford, who are hereby constituted and appointed a board of commissioners for the state for said purpose, are empowered and instructed to decide what changes shall be made in the manner in which and the place where, in the present line of said Asylum Street, the tracks of said railroads cross the street, in order to abolish the present grade-crossing and insure the safety of the public thereat, and to determine by whom, and within what time, said changes shall be made. Said commissioners are hereby authorized to order the carrying of said tracks, and structure therefor, over said Asylum Street, and direct such a change in the grade of said street in its present line and direction as they judge necessary and proper to the end aforesaid, and to order said railroad companies, or either of them, or the receiver or other person or persons operating either of said railroads, to lay out, construct, and maintain a new line or lines of railroad for a distance not exceeding one half mile each side of said street, and within three hundred feet of the center line of the present tracks of said railroads, and may require any or all of the present tracks within said limits to be taken up and removed. Said commissioners are hereby authorized and empowered to order and direct a new highway to be laid out across said railroads, and for such distance on either side thereof as they may direct, in place of or in addition to said Asylum Street. Said commissioners are empowered to make any and all orders relating to said improvement, and to all matters and things appertaining thereto, which they may deem necessary and proper, in the same manner and to the same extent as this General Assembly might do and direct; and they may direct by whom, when and how the work shall be performed,

and who shall pay for the same, and what proportion of the
entire expense, including land damages, each party shall pay
and bear; and they may, in the event of any disagreement
between the parties, determine the cost of the whole or any
portion of the works, and make any and all orders as to the
manner and amounts of payments which they may judge
reasonable; provided, however, that in no event shall said
city of Hartford be required to pay any portion of the cost
of any changes in the present depot, or of the construction
of any new depot, and. not exceeding one half of all the
other expenses, including land damages, incurred under this
resolution."

In 1886 the legislature passed the following additional
resolution:—

"Resolution conferring additional power upon the board
of commissioners upon the railroad crossing at Asylum
Street, Hartford.

"Upon the report of the board of commissioners, raised
by the provisions of a resolution providing for a bridge at
the railroad crossing at Asylum Street, Hartford, passed at
the January session, A. D. 1884, it appearing that said board
has, in compliance with the terms of said resolution, ap-
proved and adopted a plan for said improvement; that it is
necessary in the prosecution of said plan to acquire for the
purposes of the improvement various pieces of property
now owned by sundry parties; that a portion of said prop-
erty.will in all probability have to be condemned and taken
by process of law; and that such property can be most ex-
peditiously, conveniently, and economically condemned and
taken under proceedings instituted by said board in its own
name:—Be it resolved:—

"Sec. 1. That said board of commissioners is hereby, in
addition to the powers already conferred upon it, authorized
and empowered to institute and prosecute in its own name,
but for the use and benefit of the several parties to said
improvement, as the case may be, proceedings for the tak-
ing of, and appraisal of damages for, any land or other
property, including any already appropriated for railroad or

highway purposes, which in its judgment may be necessary or proper to be taken for the purposes of the improvement which has been or may be ordered by said board under authority of said resolution. The proceedings for appraising damages to persons whose property is condemned shall be in the same manner and form as those prescribed by law for appraising damages for taking land for railroad purposes, excepting as modified by this resolution. The approval of any plan or adoption of any vote or order which contemplates, necessitates or directs the use of any property not already owned or appropriated by the party, in the judgment of the board, needing the same for the purposes of the improvement, shall be a sufficient condemnation of such property to the purposes and uses of the several parties needing the same, and sufficient evidence that the same is taken for purposes of public convenience and necessity, and shall fully justify the appointment of appraisers to estimate damages, and their appraisal as aforesaid. All property taken under said proceedings shall be deemed to be taken by the party for whose benefit the proceedings are had, and upon their completion and the payment of the damages appraised, the right, title and interest so taken shall, by virtue of said proceedings, vest immediately and directly in the party for whose benefit and uses said condemnation is made as aforesaid, in the same manner and to the same extent as though said proceedings had been lawfully begun and prosecuted by and in the name of such party.

" *Sec.* 2. The appraisal of damages made upon any proceedings as aforesaid shall, when it has been made, returned and recorded, have the effect of a judgment, and execution may issue at the end of sixty days from the time when such return is made, in favor of the party to whom damages may be appraised, and against the party for whose use and benefit the property appraised is appropriated.

" *Sec.* 3. When any payments have been or are to be made for property taken as aforesaid, said board of commissioners may make any order which it may deem proper, directing any party to said improvement to contribute to

any other party such sum or sums as it may fix and determine, to apply towards said payments.

" *Sec.* 4. Said board may incur any expenses which it shall judge proper to the performance of their duties under said resolution, and to the wise and economical construction of said improvement, and any expenses so incurred shall be borne and paid by the parties to said improvement, in such proportions as said board may order.

" *Sec.* 5. The decision or action of said board, had by a majority thereof, shall, in all matters appertaining to their duties under said resolution and the amendments thereto, be regarded as the decision and action of said board, and as such shall have full force and authority.

" *Sec.* 6. This resolution shall not be construed as modifying or limiting the powers of said board in any respect as they have heretofore existed, save as expressly provided herein."

The commissioners therein named have instituted a proceeding for the condemnation of two pieces of land owned by Julius Catlin—one for the use of the New York, New Haven & Hartford Railroad Company, and the other for the use of the New York & New England Railroad Company; also a proceeding for the condemnation of two pieces of land belonging to Mary Graham—one for the use of the New York & New England Railroad Company, and the other for the use of the city of Hartford for a new highway.

To the petition of the commissioners for the appointment of appraisers Mr. Catlin and Mrs. Graham filed demurrers. The grounds of demurrer in the case of Mr. Catlin are as follows :—

" That the said acts of the legislature, under which said proceedings are commenced, are illegal and void :—

" 1. Because the legislature has not the power to oblige the city of Hartford to pay for lands taken by the said railroad companies for railroad purposes, or for expenses incurred by said companies in changing their grades, or other similar work, as the same is contrary to the twenty-fifth amendment to the constitution of this state, and also to the

fourteenth amendment to the constitution of the United States, and the eleventh section of the bill of rights of the constitution of this state.

"2. Because if the legislature has such power, it cannot delegate such power to the persons appointed commissioners.

"3. Because the legislature cannot delegate to said commissioners the power proposed to be given to them by said act, to decide what plan shall be adopted for a bridge, or what lands shall be taken for said railroads, and what amount the city shall pay therefor, without the consent of the said city.

"4. No sufficient provision is made for the payment of any damages which may be assessed for the taking of the land to be taken, or how much shall be paid by said railroad, or the city, or which one shall pay for the same.

"5. There is in said resolutions no provision obliging said railroad companies to take the lands hereby proposed to be taken and to lay their tracks thereon, or to pay for the same, except so far as it is provided that it shall have the effect of a judgment; but it does not provide that it shall be a judgment of any court, or that any court or other authority may issue execution; so that said provision is inoperative, and no other provision for payment is made.

"6. That a judgment against the New York & New England Railroad Company would be valueless, as said corporation has no property in this state, not unincumbered, upon which an execution could be levied."

The grounds of the demurrer in the case of Mrs. Graham are stated as follows:—

"The respondent Mary Graham demurs to the sufficiency of this application, because:—

"1. The resolution providing for a bridge at the railroad crossing at Asylum Street, Hartford, passed by the General Assembly at its January session, 1884, together with each and all of the acts or resolutions subsequently passed amendatory thereto, is unconstitutional and void, for the following reasons:—

" (*a*) Said resolutions provide, *inter alia*, for the taking of land for railroad purposes, the title to which shall vest in certain railroad corporations; and that the city of Hartford shall pay to said railroad companies a portion of the damages appraised for said land, so taken by them, and of the expenses and charges connected with the changing of the railroad tracks from their present location, all of which is contrary to the provisions of the twenty-fifth amendment to the constitution of the state of Connecticut.

" (*b*) In and by said resolutions the legislature has attempted to delegate to a commission the arbitrary power of deciding what land shall be taken for the purposes named therein, and of compelling certain municipal and railroad corporations, *in invitum*, to take said land and pay therefor, without any voice in the selection of said lands.

" (*c*) In and by said resolutions the legislature has attempted to give to the applicants the right to condemn and take private property for a public use, but compels the owner to look to other parties for the compensation therefor.

" (*d*) Said resolutions do not provide that any party shall pay for the land when condemned, nor do they give to the owner of the land taken any legal means of enforcing payment therefor; and, even if they do, a judgment against the New York & New England Railroad Company could not be satisfied in this state, as all their property is covered by large mortgages.

" 2. Said resolutions only authorize, if at all, a taking of land for one single and entire public use; but the applicants are now seeking, in and by these proceedings, and others pending before the same judge, both against this respondent and also against other parties, to condemn and take adjoining lands under the alleged authority of these same resolutions of the General Assembly, for three distinct public uses; while it may be so that land condemned for two of said uses may be taken and paid for by the parties for whose benefit said land is condemned, and yet the land taken for the other use may not be taken, and so the consummation

of the whole purpose contemplated by said resolutions be impossible."

The act, in scope and purpose, concerns protection of life. Neither in intent nor fact does it increase or diminish the assets either of the city or of the railroad corporations. It is the exercise of the governmental power and duty to secure a safe highway. The legislature having determined that the intersection of two railways with a highway in the city of Hartford at grade is a nuisance dangerous to life, in the absence of action on the part either of the city or of the railroads may compel them severally to become the owners of the right to lay out new highways and new railways over such land and in such manner as will separate the grade of the railways from that of the highway at intersection; may compel them to use the right for the accomplishment of the desired end; may determine that the expense shall be paid by either corporation alone or in part by both; and may enforce obedience to its judgment. That the legislature of this state has the power to do all this, for the specified purpose, and to do it through the instrumentality of a commission, it is now only necessary to state, not to argue.

From the character of the use of a right of way by the city for a highway, and of the use of a like right by the railroad companies for railways, there arises the necessity that each should be the sole owner of the right actually used by it; and the judicial proceedings are so framed as to bring about that result. Three corporations create the nuisance and are responsible to the public for its existence in, as yet, unmeasured and unknown proportions. Therefore it cannot now be said or assumed that because, for the specified reason and purpose, the railroad acquires sole ownership of the right to use land, it is under any obligation to pay the entire cost of such right. That depends upon the extent of its obligation to the public in the matter of abatement of the nuisance, to be measured by the commission. Of necessity too the three corporations must acquire, each for itself, a right of way by condemnation. The statutory pro-

ceedings for that purpose must end in requiring each to pay the owner for the right taken for itself. The fact of such payment, in this instance, proves nothing, as to the extent of the obligation of the corporation making it, in reference to the nuisance. If, after making it in form, in obedience to the statutes, the commission should require either of the other corporations to reimburse a portion of the sum so paid, it will be neither a loan nor a gift. It is but the apportionment of the amount to be raised by the three for the common purpose of abating the nuisance, made circuitously; because the intervening rights of strangers must be respected and acquired by due process of law.

If the sum set against the city should happen to exceed the cost of the necessary new highway and bridge, the excess is in no sense a gift or loan to the railroads. The city has done no more than discharge its obligation to the public; no more than pay a debt due wholly from itself; has paid nothing to or for either railroad. Each railroad when it has paid its assessment, has discharged its obligation to the public; paid all that it owed. That the debt due from the railroads is found to be less than the cost of land for new tracks, and that from the city to be more than the cost of land for new highways and bridges, is quite immaterial upon the question before us. It is a matter of payment of debts by the several corporations to the public; not of transfer of property from any one of them to any other. For, when the act in question is fully executed, the city will have received nothing, by way of loan or gift, from either railroad corporation; nor will either of the latter have received any loan or gift from the city; each one will have paid its debt to the public growing out of the wrong jointly inflicted by them upon the public. The sum assessed upon and to be paid by the city is not controlled by the cost of any particular portion of the work; but it measures the responsibility of the city for the nuisance—measures its pecuniary obligation to the public, as determined by the legislature. For this reason we think the act does not vio-

late the constitutional provision against municipal aid to railroads.

The constitution provides that " the property of no person shall be taken for public use without just compensation therefor." In its application to the condemnation of land for railway use, the word " taken " in the constitution means the exclusion of the owner from use and possession and the actual assumption of exclusive possession by the railroad corporation at the termination and as the result of judicial proceedings. The act in question provides that " all property taken under said proceedings shall be deemed to be taken by the party for whose benefit the proceedings are had, and upon their completion and the payment of the damages appraised, the right, title and interest so taken shall, by virtue of said proceedings, vest immediately and directly in the party for whose benefit and use said condemnation is made as aforesaid, in the same manner and to the same extent as though said proceedings had been lawfully begun and prosecuted by and in the name of such party." By the combined force of this act and of the general statutes the commissioners may institute judicial proceedings which may terminate in vesting in the city and the railroad corporations severally the right to use certain specified pieces of land for railway and highway purposes, if they will pay the appraised value thereof. But the meaning of the act before us is that, after appraisal completed, actual payment of the same is to be made to the owner as a necessary prerequisite to the passing of any right to or interest in the land to the corporation—to the right to occupy or use it; to the right to remove or disturb the soil; to the right to put any structure thereon. The court would enjoin the corporation from any invasion of the owner's right of possession before payment.

The enforcement of the command of the legislature upon the municipal and railroad corporations to abate the nuisance, necessitates judicial proceedings, because the land of individuals is to be taken by right of eminent domain. For this reason, for the specified purpose and to this extent, the

legislature may give to its own commission standing in court to ask that land may be subjected to the use of each and may impose upon each the same obligation to obey any order of the court in this behalf and to pay the amount of the appraisal, and then to use the land for the specified purpose, as would have been upon them if they had voluntarily asked and received in their own names.   This is not an imposition of an agent to ask for a binding judgment upon them in any matter of contract or right, as between either of them and an individual, or a corporation, or the state itself.   It is the use, in a permissible manner, by the legislature, of the governmental power to compel each corporation to contribute to the cost of the abatement of the dangerous nuisance which it now maintains.   No property is to be taken from either, no right is to be taken or even diminished ;   only they are to so use their rights as not to endanger public safety.   Neither in seeming nor in fact does the act provide for the condemnation of land for the use or in behalf, either of the commissioners or the state.   Neither the state nor the commissioners are to own any right in it ; but the commissioners are empowered so to ask that all resulting acquisition of right, all resulting obligation to perform duties, make payments, and use land, are to and upon the corporations severally.

The act has a single end in view—to separate the grade of the railroads from that of the highway at intersection. To accomplish this the commission is empowered to require and has required the railroads and the city severally and independently to become the owners of the right to use such separate pieces of land as may be necessary for new railways and new highways and bridges.   The proceeding is in the line of this requirement.

For our present purpose we have the right to assume that the commission will not change the plan adopted, and that the legislative order will continue in force against each of the three offending corporations.   We should not be justified in assuming that the legislature will be unable to enforce

its mandate against all and, upon that assumption, declare the act void.

The Superior Court is advised that there is no error in the judgment complained of.

In this opinion the other judges concurred.