GEORGE M. WOODRUFF AND OTHERS, COMMISSIONERS, *vs.* THE NEW YORK & NEW ENGLAND RAILROAD COMPANY.

Hartford Dist., Jan. T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS, TORRANCE and THAYER, Js.

The legislature, to remove a dangerous grade-crossing of the tracks of two railroads by a street in the city of Hartford, appointed a commission and empowered it to order the carrying of the tracks over the street and to order the railroad companies or either of them to lay out and maintain a new line or lines of railway for a distance not exceeding half a mile on each side of the street and within three hundred feet of the center line of the existing tracks and to require all surface tracks within those limits to be removed, to direct by whom, when and how the work should be done, to apportion the expense among the parties, but not exceeding one half to the city, and to apply to any court of competent jurisdiction for aid in the enforcement of its orders. The principal street in the case was Asylum street, but Church street, which lay north of this street and within the half mile, was crossed by the elevated track as laid out and constructed. When the work of bridging these streets and of constructing a new railroad station was approaching completion, the commission made an order that the two railroad companies should severally remove their surface tracks between the line of the abutment on the south side of Asylum street and the line of the abutment on the north side of Church street, within thirty days after the new station should be occupied by the companies respectively. One of the companies having failed to comply with this order,

the commission applied to the Superior Court for a mandamus to compel it to do so. On the coming in of the alternative writ the railroad company appeared and filed a motion that the matter be removed to the United States Circuit Court; which motion was denied. It then moved that the alternative writ be quashed. This was overruled. The company then made its return, to which the commission demurred. The court sustained the demurrer and issued a peremptory mandamus. On an appeal from this judgment it was held—

1. That the action of the legislature in providing for the removal of the grade crossing was an exercise of its police power by the state.

2. That the states are entrusted with the duty of enacting and maintaining all the internal regulations necessary for the protection of the lives, health and comfort of their people and for the security of their rights. The general government cannot exercise this power except in cases in which the power is given to it expressly or by necessary implication. No such power is given to it here.

3. That there was therefore no error in denying the motion to remove the case to the United States court, the matter being one of which that court would not have cognizance. But whether an application for a mandamus may in any case be removed from a state court to which it has been made, to an United States court: *Quære*.

4. That the legislature has inherent and plenary power to prevent all things hurtful to the comfort and welfare of society, and that its action is valid when it delegates power and jurisdiction to courts and committees to adopt measures for that end.

5. That it was no objection to the validity of the action of the commission that one of its members was a citizen and tax-payer of the city of Hartford and one a representative and stockholder of the railroads, while the commission was to apportion the expense of the improvement among them. The legislature purposely made up the commission by taking the three railroad commissioners, who had no interest in the matter, and adding one member as a representative of the city and one as representing the railroads, giving power to a majority to determine any matter. The legislature had full power to make up the commission in this way and it was not unfair to either party.

6. That the fact that the railroad company would be subjected to great expense if the order should be enforced was no reason against its legality. It was a matter to be urged before the commission, which had power to allow the company for any special damage as a part of the entire expense of the improvement.

7. That the commission was not *functus officio* by reason of its having adopted a plan for the work. It had a right to reconsider and adopt another. It was a part of its duty to see to the performance of the work as well as to plan for it, and it could not be *functus officio* so long as anything remained to be done to remove the danger at the crossing.

8. That the forbidding a railroad company to use its property in a way that would be dangerous to the public, is not a taking of it for public use;

nor is it so to prohibit its use in a particular way, by reason of which its value is depreciated.

The resolutions of the legislature provided that if certain members of the commission should refuse to act, others might be appointed, and directed in what way; also that a majority might act. A member declining to act another person was appointed in his place. Held that the court would presume that he acted legally, and that if it were not so, the actions of the other members would be legal as the action of a majority.

In applications brought to enforce a public right an affidavit is not necessary.

The return to an alternative writ of mandamus is demurrable unless it shows a right to refuse obedience; and it must state the facts which justify such refusal clearly, specifically, and with such certainty that the court can see at once that, if admitted or established, they furnish a legal alternative for obedience to the writ.

Where facts which, taken by themselves, would produce a certain legal result, but by reason of some extraneous incidents affecting them do not produce that result, those incidents are not put in issue by a denial of the facts. They are new matter and must be specially pleaded.

And where a legal right to refuse obedience to an alternative writ of mandamus can be shown in no other way than by setting forth such incidental matter, a return that omits it is bad on demurrer.

The assertion or denial of a legal conclusion, without showing the facts which support or forbid such conclusion, means nothing. A demurrer to such a pleading must always be sustained.

If any pleading misstates the effect of a statute, the adverse party in demurring does not admit the correctness of the construction claimed or that the statute imposes the obligation or confers the rights which the party alleges.

The return in the above case set up that, at the time when the order of the commission took effect, the railroad company "did not have any such surface tracks within the limits named in the order as could in any event have anything to do with the intent and purpose of said resolution of the General Assembly." Held that a demurrer did not admit the correctness of the construction of the resolution claimed, but merely referred the question of its construction to the court.

Jurisdictional facts found by any tribunal exercising only a limited statutory authority, are open to question in any other court; but such a finding is always taken to be true unless shown to be untrue.

Argued January 17th—decided May 5th, 1890.

APPLICATION of a commission appointed by the General Assembly to effect the removal of a grade crossing in the city of Hartford, for a mandamus to compel the defendant to obey its order with regard to the removal of its tracks;

made to the Superior Court in Hartford County and heard
before *Fenn, J.*

The General Assembly, at its session in 1884, passed sun-
dry resolutions for the removal of a crossing at grade of
Asylum street in the city of Hartford and the tracks of the
New York, New Haven & Hartford Railroad and of the
New York & New England Railroad, and appointed a com-
mission consisting of the three railroad commissioners and
two other persons, one representing the city of Hartford and
the other the railroad companies, the resolution providing
that if the former of the two last mentioned members should
decline to act, the common council of the city should appoint
another person to act in his stead, and if the latter, the railroad
companies should appoint the member.   The commission was
authorized to order the carrying of the street over the tracks
of the railroads, the changing of the grade of the street, the
laying out and construction by the railroad companies of
new lines of road for a distance not exceeding half a mile on
each side of the street and within three hundred feet of the
center line of the existing tracks, and the removal of those
tracks ; and to make all orders in the matter which they
might deem necessary and proper in the same manner and
to the same extent that the General Assembly might do ;
also to direct by whom, when and how the work should be
performed, and to apportion the entire expense among the
parties, except that the city should not be required to pay
any portion of the cost of the new station and not more
than half of the rest of the expense ; with a provision that
the commission might apply to any court of competent juris-
diction for aid in the enforcement of its orders.   These res-
olutions were amended in 1885, so as to authorize the
commission to order the carrying of the tracks of the rail-
roads over the street, or the street over the tracks, as they
should think best.*

* The resolutions of 1884, as amended in 1885, are as follows:—

Section 1. The city of Hartford, the New York, New Haven & Hartford
Railroad Company, and the New York & New England Railroad Company,
shall construct a bridge, or other suitable structure, with proper approaches,

Henry C. Robinson, one of the members of the commission, having declined to act, the railroad companies appointed Nathaniel Wheeler of Bridgeport in his place.

so as to carry Asylum street in said city of Hartford over the tracks of said railroads, or for the carrying of the said tracks and structure therefor over said Asylum street, at or near their present intersection with said street.

Sec. 2. If said city and said railroads shall, within three months from the passage of this act, mutually agree upon the manner in which said improvement shall be made and paid for by the respective parties, and submit such agreement to the railroad commissioners, said agreement, if approved by said railroad commissioners, may be enforced by either party thereto against any other party in any court of competent jurisdiction. For the purpose of making said agreement the mayor and court of common council of said city are hereby empowered to act for said city and bind the same.

Sec. 3. Said railroad companies and said city may jointly or severally take any lands which they shall deem necessary to properly carry out said improvement in the same manner as is now provided by statute for taking land for railroad purposes.

Sec. 4. If said city and said railroad companies shall not, within said period of three months, agree as aforesaid, and submit their said agreement in writing to the railroad commissioners and obtain their approval thereto, then the railroad commissioners, Morgan G. Bulkeley and Henry C. Robinson, both of said city of Hartford, who are hereby constituted and appointed a board of commissioners for the state for said purpose, are empowered and instructed to decide what changes shall be made in the manner in which and the place where, in the present line of said Asylum street, the tracks of said railroads cross said street, in order to abolish the present grade-crossing and insure the safety of the public thereat, and to determine by whom and within what time said changes shall be made. Said commissioners are hereby authorized to order the carrying of said tracks and structure therefor over said Asylum street, and direct such a change in the grade of said street in its present line and direction as they shall judge necessary and proper to the end aforesaid, and to order said railroad companies, or either of them, or the receiver or other person or persons operating either of said railroads, to lay out, construct and maintain a new line or lines of railroad for a distance not exceeding one half a mile on each side of said street, and within three hundred feet of the center line of the present tracks of said railroads, and may require any or all of the present tracks within said limits to be taken up and removed. Said commissioners are hereby authorized and empowered to order and direct a new highway to be laid out across said railroads, and for such distance on either side thereof as they may direct, in place of or in addition to said Asylum street. Said commissioners are empowered to make any and all orders relating to said improvement, and to all matters and things appertaining thereto which they may deem necessary and proper, in the same manner and to the same extent as this General Assembly might do and direct; and they may direct

The commission determined that the tracks of the railroads should be carried over Asylum street and that the grade of the street beneath the tracks should be lowered. The railroad companies had nearly completed under the orders of the commission the construction of their bridge over the street, and of the new railroad station, in December, 1888, and on the 20th of that month a meeting of the commissioners was held to consider the matter of ordering the removal

by whom, when and how the work shall be performed, and who shall pay for the same, and what proportion of the entire expense, including land damages, each party shall pay and bear; and they may, in the event of any disagreement between the parties, determine the cost of the whole or any portion of the work, and make any and all orders as to the manner and amounts of payments which they may judge reasonable; provided, however, that in no event shall said city of Hartford be required to pay any portion of the cost of any changes in the present depot or of the construction of any new depot, and not exceeding one half of all the other expenses, including land damages, incurred under this resolution.

Sec. 5. The orders of said commissioners shall be obligatory upon all parties, and they shall be sufficient authority for the auditor of said city to draw his order upon the treasurer of said city for the payment of any sum required to be paid by said city thereby. Said commissioners are authorized to apply to any court of competent jurisdiction, whether of this state or of the United States, for aid in any matter appertaining to said work, and to procure the enforcement and execution of their orders; and the courts of this state and the judges thereof are hereby fully empowered, upon proper proceedings, brought by or at the instance of said commissioners, or any interested party, to enforce by mandamus or otherwise the orders of said commissioners made under authority of this resolution.

Sec. 6. In case the party by whom the changes are to be made or work done cannot agree with the owner of any land or other property required to be removed or taken under the orders of said commissioners, the same, including property already appropriated or used for railroad purposes, may be removed or taken, and the damages assessed in the same manner as is now provided in case of land taken by railroad companies for railroad purposes.

Sec. 7. In the event that said Morgan G. Bulkeley shall refuse or neglect to act, the court of common council of said city of Hartford may appoint some person to act in his stead; and in the event that said Henry C. Robinson shall refuse or neglect to act, said railroad companies may select some person to act in his stead; but a majority of said commissioners shall constitute a quorum, and any orders made by a majority of them shall be orders of said board of commissioners, and binding as such; nor shall the failure of either said Bulkeley, said Robinson, or their substitutes to act, in any way affect proceedings under this resolution.

of the surface tracks of the roads between Asylum street and the north side of Church street, a street parallel with and next north of Asylum street, and a short distance from the latter. At this meeting the New York & New England Railroad Company appeared before the commission and filed exceptions to the proceedings of the board in the matter, which were overruled by the board. The railroad company then filed a motion that the proceedings be dismissed, which motion was denied. The commission then passed the following order :—

" And now, after consideration, this board declines to dismiss said proceedings, but finds that the completion of said improvement, as heretofore ordered, the carrying out of the design and instructions of the legislative acts creating and regulating this board, and public convenience and necessity all require, and this board deems it necessary and proper to order and direct, and we do accordingly order and direct, that said New York & New England Railroad Company, and the New York, New Haven & Hartford Railroad Company, severally take up and remove their surface tracks between the line of the face of the abutment on the south side of Asylum street, and the line of the face of the abutment as now located and established on the north line of Church street, so called, within thirty days after the new depot at said Asylum street shall be occupied and used by said companies respectively."

This order not being obeyed by the New York & New England Railroad Company, the commission brought the present application to the Superior Court for a mandamus to compel that company to remove its tracks within the space mentioned, and that court issued an alternative writ of mandamus.

The railroad company appeared and filed a motion for the removal of the case to the United States Circuit Court, which was denied. It then moved to quash the alternative writ, which motion was also denied. It then filed the following return to the alternative writ :—

" The New York & New England Railroad Company, first

protesting that this cause has been lawfully removed into the Circuit Court of the United States, in and for the district of Connecticut, and that this court has now no jurisdiction of this cause, and that this defendant ought not to be compelled to answer or proceed further here, in obedience to a rule of this court ordering it to show cause why a writ of mandamus should not issue against it, as prayed in an application purporting to be made to this court by George M. Woodruff, Morgan G. Bulkeley, William H. Hayward, William O. Seymour and Nathaniel Wheeler, assuming to be a board of commissioners, acting under and by virtue of a resolution of the General Assembly of the state of Connecticut, approved April 4th, 1884, entitled 'Providing for Bridge at Railroad Crossing, Asylum Street, Hartford,' and the resolutions in addition thereto and amendment thereof, now appears in court, and for cause shows as follows, to wit :—

" 1. At the time of the passage of said resolution, to wit, on the 4th day of April, 1884, Morgan G. Bulkeley, one of the plaintiffs, was, and during all the proceedings hereinafter described of the board of commissioners acting under said resolution, continued to be mayor of the city of Hartford, and a citizen and tax-payer thereof, and as such was interested in the result of said proceeding, and, as between the city of Hartford and the defendant, was by said resolution made, and in fact acted and now acts, as judge in his own cause, contrary to the fundamental principles of the social compact and the law of the land.

" 2. On said day Henry C. Robinson was a director and stockholder of the New York, New Haven & Hartford Railroad Company, and was a citizen and tax-payer of the city of Hartford, and in both such relations was interested in the result of said proceedings, and therefore by said resolution was made judge in his own cause, both as between the said railroad company and the defendant and as between said city of Hartford and the defendant, contrary to the fundamental principles of the social compact and the law of the land.

"3. On the 22d day of October, 1885, the said board of commissioners, appointed by said resolution, at a meeting duly held in the city of Hartford, adopted a vote, hereto appended, and marked "Exhibit *A*," which, with the plan therein referred to, is made a part of this answer. Said vote was communicated by said board of commissioners to this defendant as its final decision between the parties in interest.

"4. On the 24th day of March, 1886, at a meeting duly held in the city of Hartford, said board of commissioners adopted the vote hereto annexed and marked "Exhibit *B*."

"5. By said votes the said board was itself bound, and the said board thereby exhausted its powers, if any it legally possessed, and the subsequent proceedings hereinafter described are therefore void.

"6. On the 11th day of March, 1887, the plaintiffs, to wit, the said George M. Woodruff, Morgan G. Bulkeley, William H. Hayward, William O. Seymour, and Nathaniel Wheeler, met at the city of Hartford, assumed to constitute and act as the board of commissioners provided for in said resolution of the General Assembly, and adopted certain votes, which are hereto annexed, marked "Exhibit *C*," and which, with the plan therein referred to, are made a part of this answer.

"7. On December 20th, 1888, the plaintiffs made an order, hereto annexed, marked "Exhibit *D*," the defendant having filed exceptions in the manner and form therein recited. Notice of said order was given to the defendant.

"8. Nathaniel Wheeler, one of the plaintiffs, who acted as a member of said board of commissioners in the proceedings described in the last two paragraphs, was, during all said time, and has continued to be, a stockholder and director of the New York, New Haven & Hartford Railroad Company, and as such was interested in the result of said proceedings, and acted therein as a judge in his own cause against the defendant, contrary to the fundamental principles of the social compact and the law of the land.

"9. The said order, described in paragraph seven, was in contradiction and violation of the vote and decision of said board described in paragraph three.

" 10. The said order was not made by the plaintiffs in order to carry out the intent or any of the purposes of said resolutions of the General Assembly.

"11. The new depot at Asylum street was first occupied and used by the defendant on the first day of July, 1889. At the expiration of thirty days from said time the defendant did not have, nor has it at any time since said first day of July had, any surface tracks across or upon said Asylum street, or any such surface tracks anywhere existing within the limits named in said order of December 29th, 1888, as could in any wise affect the safety or convenience of travel upon any railroad or Asylum street, or as could affect the separation of the grades of the railroads and Asylum street, or the operation of any railroad across Asylum street, or as could in any event have anything to do with the execution of the intent or purposes of the said resolutions of the General Assembly under the plans adopted either by said board of commissioners or by the plaintiffs assuming to act as such.

" 12. The defendant is a railroad corporation under the laws of this state, and has surface tracks running from a line a little north of Asylum street continuously northward across what is called Church street (which defendant denies to be a street or highway), which tracks are owned and operated by the defendant as a part of its railroad, are within its location as legally established, and within one hundred feet of the old center line of its location, are all laid upon land owned by the defendant in fee, are necessary for the enjoyment and profitable use by the defendant of said land, and cannot be taken up or removed, as commanded by said order or as prayed for by the plaintiffs, without doing damage to the defendant in the sum of two hundred thousand dollars.

" 13. The defendant denies that the plaintiffs were legally constituted as a board of commissioners, authorized to act as such under the said resolution of the General Assembly ; denies further that the said order of December 20th, 1888, was within the authority of the plaintiffs to lawfully make against the defendant, and also denies all other allegations

of the plaintiffs' application, except as herein above admitted.

"14. And defendant further shows that said order of the plaintiffs of December 20th, 1888, and the said resolutions, and all proceedings thereunder, are in violation of the constitution of the United States and void.

"15. The said order and the said resolutions, and all proceedings thereunder, are in violation of the constitution of Connecticut and void.

"16. Said order is void because said legislative resolutions and the proceedings thereunder, including said order, and also said order in itself, deprive this defendant of property without due process or course of law, and deny to it the equal protection of the laws, contrary to the constitution of the United States and to the constitution of Connecticut.

"17. Said order is void because the said resolutions and all the proceedings thereunder, including said order, and said order in particular, operate to deny to the defendant the equal protection of the laws of this state contained in sections 3518, 3489, 3491, 3493, and 3495 of the General Statutes of Connecticut, contrary to the constitution of the United States.

"18. Said order is void because it takes the property of this defendant for a public use without just compensation therefor, contrary to the constitution of Connecticut.

"19. Said order is void because the plaintiffs were not by said resolutions permitted, in any of the proceedings of which it purports to form a part, to apportion the expense or loss caused by the changes ordered, according to the law of the land or any rules or principles of distributive justice, but were limited by an arbitrary rule forbidding them to apportion more than one half upon the city of Hartford, contrary to the fourteenth amendment to the constitution of the United States and to the constitution of Connecticut.

"20. Said order is void because the plaintiffs, in making the same, as well as in all the proceedings of which it purports to form a part, were acting as a special tribunal, established solely for the trial and decision of a particular

controversy between certain individuals, not in accordance with the law of the land; all of which is contrary to natural justice, to the constitution of Connecticut, and to the fourteenth amendment to the constitution of the United States.

" 21. The said order is void because this defendant is thereby deprived of its right to a trial by jury, as secured by the constitution of Connecticut.

" 22. The said order is void because the plaintiffs, in making it, exercised judicial powers without being a court duly established with permanent jurisdiction defined by law, as required by the constitution of Connecticut.

" Wherefore, for each and all of the causes and reasons herein set forth, the defendant insists that said writ of peremptory mandamus should not issue, as prayed for in said application, and prays the judgment of the court that it may be hence dismissed."

To this return the plaintiffs demurred. The court sustained the demurrer, and ordered that a peremptory writ of mandamus be issued, and the defendants appealed to this court.

Some further facts relating to the dangerous condition of the grade crossing and to sundry plans considered for its removal before the adoption of the resolutions in question, are given in the opinion of the court.

*S. E. Baldwin* and *E. D. Robbins*, for the appellants.

FIRST. The resolutions constituting the commission are invalid.

1. Messrs. Robinson, Bulkeley and Wheeler are made judges in their own cause. This violates a fundamental principle of jurisprudence and legislation. Brown's Legal Maxims, 91; *Stoddard* v. *Moultrop,* 9 Conn., 502; *English* v. *Smith,* 13 id., 221; *Hawley* v. *Baldwin,* 19 id., 584; *Windham Cotton Mfg. Co.* v. *Hartford, Prov. & Fishkill R. R. Co.,* 23 id., 373, 384; *Keeler* v. *Stead,* 56 id., 501, 507; Gen. Statutes, § 395; 7 Col. Records, 333; *Fox* v. *Hazelton,* 10 Pick., 275; *Richardson* v. *Welcome,* 6 Cush., 331; *The Queen*

v. *Justices of Hertfordshire*, 6 Queen's Bench, 753; *Dimes* v. *Proprietors of Grand Junction Canal*, 3 H. L. Cas., 759; Cooley on Const. Lim., 410–414.

2. The board is a court, unconstitutionally constituted. Conn. Constitution, Art. 5; *Brown* v. *O'Connell*, 36 Conn., 432, 446; *Chester* v. *Conn. Valley R. R. Co.*, 41 id., 348; *State* v. *New Haven & Northampton Co.*, 43 id., 351, 383.

3. The resolutions delegate to the board legislative powers. Conn. Constitution, Art. 3; *N. York, Hous. & Northern R. R. Co.* v. *Hartford & Erie R. R. Co.*, 36 Conn., 196, 201; *Brown* v. *O'Connell*, id., 446; *State* v. *Wilcox*, 42 id., 364; *State* v. *N. Haven & Northampton Co.*, 43 id., 351; *Woodruff* v. *Catlin*, 54 id., 295; *Hutton* v. *Camden*, 39 N. Jer. Law, 122; *Yates* v. *Milwaukee*, 10 Wall., 497, 505; Tiedman's Limitations of Police Power, § 122 *a*.

4. The commission is granted judicial, legislative and executive powers. Conn. Constitution, Art. 2; *Starr* v. *Pease*, 8 Conn., 541, 548.

5. We are denied the equal protection of the laws, in being excluded from the ordinary forum, compelled to go to a partisan tribunal, and denied an appeal. Gen. Statutes, §§ 3489, 3493, 3495; *Wheeler's Appeal from Probate*, 45 Conn., 306, 320; *Grissell* v. *Housatonic R. R. Co.*, 54 id., 447, 463; *Town of Westbrook's Appeal from R. R. Comrs.*, 57 id., 95; *Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. R., 181, 188. Also because the city's part of the expense was arbitrarily limited. Gen. Statutes, § 3489; *Grissel* v. *Hous. R. R. Co.*, supra; *Town of Westbrook's Appeal*, 57 Conn., 95, 103; *Town of Fairfield's Appeal from R. R. Comrs.*, id., 167, 171; *Soon Hing* v. *Crowley*, 113 U. S. R., 703, 709; *Minneapolis & St. Louis R. R. Co.* v. *Beckwith*, 129 id., 26, 29.

6. Our property is taken without due process of law. Conn. Constitution, Art. 1, §§ 9, 12; U. S. Constitution, 14th Amendment; 2 Hare on Const. Law, 756; *Bostwick* v. *Isbell*, 41 Conn., 303, 307; *Passenger Cases*, 7 How., 283, 324; *Pumpelly* v. *Green Bay Co.*, 13 Wall., 166, 179; *Davidson* v. *New Orleans*, 96 U. S. R., 97, 102; *Railroad Commission Cases*, 116 id., 307, 331, 336; *Mugler* v. *Kansas*, 123

id., 663; *Dent* v. *West Virginia*, 129 id., 114, 124; *Louis-ville & Nashville R. R. Co.* v. *Railroad Commission*, 19 Fed. Rep., 604, 679; *Chicago & N. West. R. R. Co.* v. *Dey*, 35 id., 866, 878; *Scott* v. *Toledo*, 36 id., 385, 396; *People* v. *Otis*, 90 N. York, 48, 52; *Matter of Jacobs*, 98 id., 98, 110; *People* v. *Gillson*, 109 id., 389, 400; *People* v. *O'Brien*, 111 id., 1; *Lake View* v. *Rose Hill Cemetery Co.*, 70 Ill., 191, 197; *Langford* v. *Comrs. of Ramsey Co.*, 16 Minn., 375, 380; *State* v. *Chicago, Milw. & St. Paul R. R. Co.*, 36 id., 402.

SECOND. The order of the commissioners was invalid.

1. The removal of the tracks was beyond their jurisdiction. The single end in view in the resolutions was the removal of the grade crossing on Asylum street. *Woodruff* v. *Catlin*, 54 Conn., 298. All attempt to remove the tracks on Church street, a totally different street, was *ultra vires*.

2. The order was not shown to be within the jurisdiction of the board even if they had power to act in the matter. Jurisdictional facts must appear on the face of the papers. *Sears* v. *Terry*, 26 Conn., 273–281. The resolutions required that the parties should have failed to agree. The fact of disagreement does not appear. *Southington* v. *Clark*, 13 Conn., 370, 373.

3. The order was unreasonable. We were required to surrender without compensation $200,000 worth of property, while its surrender had no relation to the Asylum street crossing.

4. Mr. Wheeler was not a member of the board. The act would have authorized his appointment if Mr. Robinson had declined to act at the outset, but he acted until the board had adopted a plan, and Mr. Wheeler then had no voice in that part of the proceedings. Our return denied the legality of his appointment and the demurrer admitted this. If the allegation had been denied the evidence would have shown, as we believe, that we never assented to his appointment. This fact would have vitiated the action of the board. *Haw-ley* v. *Baldwin*, 19 Conn., 590.

5. The order was passed when the board was *functus officio*. They had adopted the plan of carrying the street over

the railroad tracks and the legislature had confirmed their action by its act of February 19th, 1886, and the courts had upheld it. *Woodruff* v. *Catlin*, 54 Conn., 298. Nothing short of new authority from the legislature could authorize a relocation of the crossing. *In re Poughkeepsie Bridge Co.*, 108 N. York, 483.

6. Our property is taken without compensation. Gen. Statutes, § 1; *Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. R., 181, 188; *Enfield Toll Bridge Co.* v. *Conn. River Co.*, 7 Conn., 28, 49; *Same* v. *Hartford & N. Haven R. R. Co.*, 17 id., 40, 54, 67; *Hawley* v. *Harrall*, 19 id., 142, 151; *Imlay* v. *Union Branch R. R. Co.*, 26 id., 249, 260; *Harding* v. *Stamford Water Co.*, 41 id., 87, 93.

THIRD. The present suit is defective.

1. No title is shown in the plaintiffs. It was necessary for them to show a title in all the plaintiffs. Nothing is shown as to Mr. Wheeler's title. These were necessary jurisdictional averments. *Sears* v. *Terry*, 26 Conn., 273.

2. The state was not made a party. *Lyon* v. *Rice*, 41 Conn., 245; *Osborn* v. *U. S. Bank*, 9 Wheat., 738, 819; *Application of Pacific Railway Commission*, 32 Fed. Rep., 241, 258.

3. No failure to agree is alleged. *Waterbury* v. *Darien*, 8 Conn., 161; *Matter of Lockport & Buffalo R. R. Co.*, 77 N. York, 557, 563.

4. The application is not verified by oath. High on Extraord. Legal Remedies, § 507; *Poultney* v. *City of LaFayette*, 12 Pet., 472.

5. No demand is alleged that the tracks should be removed. *Rex* v. *Brecknock &c. Canal Co.*, 3 Adol. & El., 217; *The Queen* v. *Bristol & Exeter R. R. Co.*, 4 Queen's Bench, 162; *State* v. *Governor*, 25 N. Jer. Law, 331; *Leonard* v. *House*, 15 Geo., 473; *Kemerer* v. *The State*, 7 Neb., 130; *Condit* v. *Comrs. of Newton Co.*, 25 Ind., 422; *State* v. *Davis*, 17 Minn., 429; *State* v. *Schaack*, 28 id., 358; *Douglas* v. *Chatham*, 41 Conn., 211, 237.

6. Our petition for the removal of the case to the U. S. Circuit Court was improperly denied. *Burlington &c. R. R.*

*Co.* v. *Dunn*, 122 U. S. R., 513. A mandamus is a suit at law of a civil nature. *Gilman* v. *Bassett*, 33 Conn., 298, 305 ; *State* v. *New Haven & Northampton Co.*, 41 id., 134, 137 ; *Green* v. *Liter*, 8 Cranch, 229 ; *Columbia Ins. Co.* v. *Wheelwright*, 7 Wheat., 534 ; *Kendall* v. *U. States*, 12 Pet., 524, 615 ; *Holmes* v. *Jennison*, 14 id., 564 ; *Kentucky* v. *Denison*, 24 How., 66, 97 ; *Kohl* v. *U. States*, 91 U. S. R., 367 ; *Boom Co.* v. *Patterson*, 98 id., 403 ; *Ames* v. *Kansas*, 111 id., 449 ; *N. Orleans &c. R. R. Co.* v. *Mississippi*, 112 id., 12 ; *Pacific Railroad Removal Cases*, 115 id., 1. The case is one arising under the U. S. Constitution. *New Orleans &c. R. R. Co.* v. *Mississippi*, 112 U. S. R., 12.

*H. C. Robinson* and *W. F. Henney*, for the appellees.

ANDREWS, C. J. Prior to the passing of the several resolutions hereinafter mentioned, the New York & New England Railroad, a double track railway from Boston to the Hudson river, and the New York, New Haven & Hartford Railroad, another double track railway from Boston by way of Springfield to the city of New York, crossed Asylum street, a much traveled highway in the city of Hartford, side by side and at grade. The situation was further complicated by the fact that each of the railroad companies had one or more side tracks crossing the street parallel to their main tracks and extending a considerable distance each way therefrom, and that the passenger station used in common by the two companies was immediately contiguous to said street. It was a condition of things exceptional and dangerous—dangerous to travel along the street and dangerous to every train on both the railroads, and perhaps most dangerous of all to persons approaching or leaving the station. In the year 1884 the General Assembly, in the exercise of its supreme authority, determined that it was necessary for the public safety that this dangerous condition be changed by separating the grade between the street and the tracks of the railroads, and to that end passed a resolution, approved April 4th, 1884, and which is on page 1026, volume 9

of the Special Laws. The sixth section of that resolution was amended by a resolution approved March 3d, 1885, found on page 21 of volume 10 of the Special Laws. In the year 1885 another resolution was passed, and approved March 26th, 1885, found on page 80 of volume 10 Special Laws; and in 1886 still another resolution, approved February 19th, 1886, found on page 212, of volume 10 Special Laws. These are the several resolutions referred to in and made part of the application in the present case.

In reference to these resolutions, and speaking of them all as parts of one act, as in fact they are, this court in *Woodruff* v. *Catlin*, 54 Conn., 295, said:—" The act in scope and purpose concerns the protection of life. Neither in intent nor fact does it increase or diminish the assets either of the city or of the railroad corporations. It is the exercise of the governmental power and duty to secure a safe highway. The legislature having determined that the intersection of two railways with a highway in the city of Hartford at grade is a nuisance dangerous to life, in the absence of action on the part either of the city or of the railroads may compel them severally to become the owner of the right to lay out new highways and new railroads over such land and in such manner as will separate the grade of the railways from that of the street at intersection; and may compel them to use the right for the accomplishment of the desired end; may determine that the expense shall be paid by either corporation alone or in part by both, and may enforce obedience to its judgment. That the legislature of this state has the power to do all this for the specified purpose, and to do it through the instrumentality of a commission, it is now only necessary to state, not to argue."

To abolish this grade crossing and to insure the safety of the public thereat the legislature invested its commission with very broad powers. It was authorized and empowered to order the carrying of the tracks and the structure therefor over Asylum street, and direct such a change in the grade of the street in its present line and direction as they should judge necessary and proper to the end aforesaid, and

to order the railroad companies or either of them to lay out, construct and maintain a new line or lines of railroad for a distance not exceeding one half a mile on each side of the street and within three hundred feet of the center line of the present tracks of the railroads, and require any or all the present tracks within these limits to be taken up and removed; to make any and all orders relating to said improvement and to all matters and things appertaining thereto, which they might deem necessary and proper, in the same manner and to the same extent that the General Assembly itself might do and direct. And it was authorized to direct by whom, when, and how, the work should be performed. And that there might be no failure in accomplishing the purpose which the legislature had in view, it was provided how vacancies in the commission should be filled; that the decision or action of the board of commissioners had by a majority thereof should in all matters appertaining to its duties have the full force and authority and be regarded as the decision and action of the board. And finally it was authorized to apply to any court of competent jurisdiction for aid in any matter appertaining to said work, and to procure the enforcement and execution of their orders; and the courts of this state and the judges thereof were fully empowered, upon proceedings brought by or at the instance of the commissioners, to enforce by mandamus or otherwise the orders of the commissioners made under the authority of said resolutions. Even with such a panoply of power the history of the commission appointed by the resolutions shows that it had no easy task. There were divergent counsels to be harmonized, rival if not hostile interests to be placated and so far as possible to be brought into accord, and there were contradictory plans to be considered, re-considered, modified, accepted or rejected.

At an early stage in its labors the commission had it in contemplation to remove the grade crossing by a plan called the "west side" or the "Bunce" plan, which was to change the tracks of the railroads a few feet westerly from their present line and to carry the street over them upon a bridge,

and had made orders and commenced proceedings towards carrying out that plan. But on the 11th day of March, 1887, the commission voted that the vote adopting the "Bunce" or "west side" plan, and all other votes and orders theretofore made and passed in accordance therewith, and confirming, approving, renewing and re-enacting the same, be and the same were rescinded. At the same meeting it was also voted "that the New York, New Haven & Hartford Railroad Company, and the New York & New England Railroad Company, are hereby ordered to carry their tracks over Asylum street, leaving a clear space between said structure and said street of not less than sixteen feet, in general accordance with the plan and drawings submitted to the commission February 4, 1887, and marked 'Proposed Station at Hartford, Conn., Feb. 15, 1887;' and for this purpose the city of Hartford is hereby directed to lower the grade of said street under said tracks two feet; and in case of disagreement between said parties details of construction to be hereafter determined by this commission."

The plan and the drawings referred to in this vote do not appear in the record before us. It is very evident however from the prominent reference which it received in the vote that the "station at Hartford" was a material if not a controlling feature in the plan thus adopted. To carry the tracks of the railroads over the street so as to leave a clear space of sixteen feet, would require the structure to be commenced from a third to a half mile distant from the street. Such a structure would necessarily have to conform to, or be conformed to by, the station. It is therefore highly probable that the entire plan according to which the two railroads were to carry their tracks over Asylum street was made to depend upon the question of that station. The more so when it is kept in mind that "depots for passengers and freight are essential parts of the railroads themselves." *State ex rel. N. Haven & Derby R. R. Co.* v. *R. R. Commissioners*, 56 Conn., 313.

All the parties in interest seem to have acquiesced in the order so passed. Work pursuant to the plan so adopted

commenced at once and proceeded with reasonable dispatch, so that on the 20th day of December, 1888, "the bridges and approaches thereto for the purpose of carrying the tracks of the New York, New Haven & Hartford Railroad and the New York & New England Railroad over Asylum street in the city of Hartford, having been nearly completed in general accordance with the plans and orders heretofore made by the board," at a meeting of the commission held on that day at which all parties were present and were duly heard, the commission voted as follows :—"And now after consideration the board * * * finds that the completion of the said improvement as heretofore ordered, the carrying out of the designs and instructions of the legislative acts creating and regulating this board, and public convenience and necessity all require, and this board deems it necessary and proper to order and direct, and we do accordingly order and direct, that the New York & New England Railroad Company and the New York, New Haven & Hartford Railroad Company severally take up and remove their surface tracks between the line of the face of the abutment on the south side of Asylum street and the line of the face of the abutment as now located and established on the north side of Church street, so called, within thirty days after the new depot at said Asylum street shall be occupied and used by said companies respectively."

Of the passing of this vote and order due and proper notice was given to both railroad companies. The New York & New England Railroad Company having failed and refused to comply therewith, the board of commissioners made the present application to the Superior Court for Hartford County for a peremptory mandamus. Upon the coming in of the alternative writ the railroad company appeared and filed a motion that the matter be removed to the next Circuit Court of the United States for the District of Connecticut; which motion was denied. The company then moved that the alternative writ of mandamus be quashed; which motion was overruled. Thereupon the railroad company made its return to the alternative writ as on file; to which return the

applicants demurred.   The Superior Court sustained the de-
murrer, found the allegations of the application to be true
(for the want of any sufficient answer thereto), and ordered
a peremptory writ of mandamus to issue.   From this order
the railroad company now appeals to this court.

There is a somewhat formidable array, in number, of rea-
sons of appeal.   It is not necessary to mention them all.   It
will be much more convenient to group the questions as they
have been presented in the progress of the case,—under the
motion to remove, under the motion to quash, and under the
several paragraphs of the return.

Under the charter of Charles II. the General Assembly of
the colony was the supreme judicial as well as the supreme
law-making power.   And notwithstanding the constitution,
article fifth, section one, provides that " the judicial power
of the state shall be vested in a Supreme Court of Errors, a
Superior Court, and such inferior courts as the General As-
sembly shall from time to time ordain and establish," the
General Assembly still possesses, in the highest degree that
any legislature in any state can, " that inherent and plenary
power which enables it to prevent all things hurtful to the
comfort and welfare of society."   It has from time to time,
and at many times, delegated " power and jurisdiction " to
courts and committees for the protection of the lives, limbs,
health, comfort and quiet of persons and the protection of
property within the state.   *Wheeler's Appeal from Probate,*
45 Conn., 306, and the cases cited in the opinion ; *Raymond*
v. *Fish,* 51 Conn., 80 ; *Dunham* v. *City of New Britain,* 55
Conn., 378.

This court decided in the case of *Woodruff* v. *Catlin, supra,*
that the resolutions now under consideration presented an
instance in which the sovereign power of the state directly
interfered for the protection of life.   Having determined
that the grade crossing at Asylum street in Hartford was a
menace and a danger to public safety which ought to be re-
moved by separating the grade of the street from that of the
tracks of the railroads, and having fixed the proportion of
the expense beyond which, in no event, should the city be

charged, and having defined the limits within which the commission should have authority, it sent out its commission to perform the work. Itself passed upon and decided the general question. The details and the carrying of them out it delegated in the most explicit language to the judgment of the commission.

Without undertaking to decide whether this proceeding is a "suit of a civil nature at common law or in equity," or whether an application for a mandamus may be removed from a state court to which it has been made to an United States court, it will be agreed that there was no error in denying the motion to remove the cause from the state court unless there is in it some question of which the federal courts can take cognizance.

The tenth amendment to the national constitution provides that "the powers not delegated to the United States by the constitution nor prohibited by it to the states, are reserved to the states respectively or to the people." It may therefore be stated as a general proposition that the police power in the United States is located in the states. The state is entrusted with the duty of enacting and maintaining all the internal regulations which are necessary for the preservation of rights and the prevention of injury to the rights of others. The United States government cannot exercise this power except in cases in which the power of regulation is granted to the general government expressly or by necessary implication." Teidman on Police Power, sect. 201 ; Cooley's Const. Limitations, 574 ; *United States* v. *De Witt*, 9 Wall., 41 ; *Patterson* v. *Kentucky*, 97 U. S. R., 501. In the case last cited the Supreme Court of the United States said (p. 504 :)—" By the settled doctrine of this court the police power extends at least to the protection of the lives, the health and the property of the community against the injurious exercise by any citizen of his own rights. State legislation strictly and legitimately for police purposes does not, in the sense of the constitution, necessarily intrench upon any authority which has been confided expressly or by implication to the national govern

ment. The Kentucky statute under examination manifestly belongs to that class of legislation. It is in the best sense a mere police regulation deemed essential to the protection of the lives and the property of the citizens." Nor is there anything in the Fourteenth Amendment which varies the doctrine. In *Barbier* v. *Connolly*, 113 U. S. R., 27, the Supreme Court again said in reference to that amendment:—"But neither the amendment—broad and comprehensive as it is, nor any other amendment, was designed to interfere with the power of the states, sometimes termed their police power, to prescribe regulations to promote the health, peace, morals, education and good order of the people." *Civil Rights Cases,* 109 U. S. R., 3; *Ex parte Yarbrough,* 110 id., 651; *Rosenbaum* v. *Bauer,* 120 id., 450; *Mugler* v. *Kansas,* 123 id., 623. These and many other cases which might be referred to show that no federal jurisdiction can attach to this exercise by the legislature of Connecticut of its police authority.

Most of the reasons set forth under the motion to quash are repeated in the return and can better be considered there. Of those that are not so repeated one is, "that the application on which the alternative writ was issued was not verified by an affidavit." In applications brought for the enforcement of public rights an affidavit is not necessary. High on Ext. Remedies, sect. 507; *State* v. *Wilmington Bridge Co.,* 3 Harr., 312. Another is, "that the application was not signed by the commissioners, but by their counsel." As the resolutions of the legislature direct the court to act upon any application brought by, or *at the instance of,* the commission, we think there was no error in overruling the objection. The objections based on the alleged want of service of the alternative writ were properly disregarded.

We come now to the return. This is demurred to generally and specially, as a whole and as to each of the paragraphs separately; among other reasons, because it joins in one plea matters of traverse, matters of confession and avoidance, and allegations of the legal insufficiency of the appli-

cation.   So far as these reasons of demurrer relate to merely formal defects, or other defects that might have been removed by any amendment which did not add to the substance of the allegations in the return, we think they were waived at the hearing below and cannot be considered here.

The alternative writ of mandamus is usually regarded as standing in the place of the complaint in an ordinary action, and it must show a *primâ facie* case entitling the applicant to the extraordinary remedy asked for.   In the present case the facts alleged in the alternative writ are the several resolutions of the legislature creating the applicants a board of commissioners and conferring on them certain powers, and the order made by them as such commissioners and the non-compliance with that order by the respondent.   These facts did show a clear *primâ facie* case.   The return to an alternative writ is demurrable unless it shows a right to refuse obedience to it; and it must state the facts which justify such refusal clearly, specifically, and with such sufficient certainty that the court can see at once that such facts, if admitted or established, do furnish a legal alternative for obedience to the writ.   High on Extraordinary Remedies, sections 449–460; *State ex rel. Cothren* v. *Lean,* 9 Wis., 279; *Springfield* v. *County Comrs.*, 10 Pick., 59; Moses on Mandamus, 210; *Commercial Bank* v. *Canal Comrs.*, 10 Wend., 25.

There is in the return before us no direct denial of the facts alleged in the alternative writ; and it is possible that even such a denial, had it been made in this case, would not have withstood the test of a demurrer.   It would deny in terms what the court would be bound to know judicially to be true, that is, the existence and the terms of the legislative resolutions; while the order made by the commission and the non-compliance therewith are admitted or are shown by the exhibits made a part of the return itself.   We need not discuss this.   A general denial puts in issue the existence of those facts which, if they exist, constitute a *primâ facie* cause of action or ground of defense.   When these facts exist, but by reason of some extraneous features or elements affecting them they do not produce the otherwise

Woodruff *v.* N. York & N. Eng. R. R. Co.

necessary result, that element which destroys the *primâ
facie* legal effect of the facts is not put in issue by such a
denial. It is new matter and must be specially pleaded.
And so where a legal right to refuse obedience to a writ
can be shown in no other way than by setting forth such
extraneous features or elements, a return that omits them is
clearly bad on demurrer.

The first paragraph alleges as a reason why the peremp-
tory writ should not issue, that Morgan G. Bulkeley, one
of the commissioners, was a citizen and a tax-payer of
Hartford, and as such was interested in the result, and that
by the resolutions he was made a judge in his own cause.
The second paragraph alleges in substance the same reason
against Henry C. Robinson, and the eighth paragraph a simi-
lar reason against Nathaniel Wheeler. It seems to us that
the commissioners are in no just sense parties to this pro-
ceeding. True, it is entitled with their names, but it is so
only by a mistaken use of terms. In this cause the state is
itself proceeding as directly as it does in a criminal prosecu-
tion. The state is the party. It would never be thought
proper that a criminal case should be entitled in the name
of the state's attorney against the person prosecuted. He
is the mere agent which the state employs to carry on its own
prosecution. That might be an allowable figure of speech
which should put the mere instrument used in the doing of
an act for the actor himself. But as the statement of a fact
it could never be allowed. The surgeon's knife with which
he removes the gangrene from the body of his patient can
never be made to mean the same thing as the hand that
wields it. Not being parties, it follows that it is not their
cause.

And there is nothing in the objection that the commis-
sioners were judges, and were interested in the matter to be
decided. They were appointed to carry out the decree of
the legislature that the nuisance of the grade crossing should
be removed; and they had substantially no power except to
exercise a choice as to the means by which the decree should
be enforced. It is true that the commission was to deter-

mine upon what should be allowed as the entire expense of the improvement, and as to how this sum should be apportioned between the two railroads and between the railroads and the city. Their action in this matter may perhaps be regarded as quasi judicial. This however is not the exact objection made, but that two of the commissioners represented respectively the city and the railroads, and that each of these commissioners was interested in this apportionment, the representative of the city having an interest as a citizen and tax-payer in making the share set to the city as low as possible, and the representative of the railroads having an interest as a stockholder in making as small as possible the sum assigned to the railroads. But the legislature deemed it best to constitute the commission by taking as its basis the three railroad commissioners, whose freedom from personal interest or bias is not questioned, and adding to them two other members, one as representing the city and interested in its behalf, and the other as representing the railroads and interested in their behalf. The purpose of the legislature in the matter is made entirely clear by the provision of the resolution that if the member representing the city should decline to act the common council of the city should appoint a person to take his place, and if the member representing the railroads should decline to act that the railroad companies should appoint a person to take his place, this appointment requiring the concurrence of the two companies, so that he became the representative of both. The advantage of this arrangement was that the interests of each party would be thoroughly looked out for, while the interest of one of the members was balanced by that of the other, and the remaining members were a majority and could determine any matter by their vote. We know of no reason why such action on the part of the legislature is not valid. It had power to constitute the commission as it chose, while its action in this respect was perfectly fair towards all the parties. Whatever objection could have lain against Mr. Robinson as interested in one of the roads more than in the other and as interested in favor of the city of Hartford as a tax-payer

of the city, was removed by his declining to act and the appointment by the two companies of Mr. Wheeler, who was not a tax-payer of the city and had no interest in its favor.

In the defendant's brief it is contended that the order made by the commission, and recited in the alternative writ, was passed when the commission was *functus officio.* The third, fourth, fifth, sixth, seventh and ninth paragraphs of the return are all dependent upon this contention. An officer, a commission, a board, or a committee, is *functus officio* when it has performed its duty. The commission created by the legislative resolutions was *functus officio* if it had completed the work it was set to do. That work was to so change the condition of things at the crossing in Asylum street as to make it safe, so far as possible, for everybody ; safe for people on the railroads, safe for travellers along the street, and safe for those going to or coming from the depot. Deciding upon a plan according to which the work might be done did not do the work. Many plans might be agreed upon, changed or rejected, and new ones adopted, without advancing the work itself at all. The duty of the commission included not only such service as is done by the architect who designs the plan of a house, but also the work of the builder by whom the edifice is constructed ; and the latter work is not completed until the rubbish is cleared away from the finished structure and it is made ready for habitation. This commission could not be *functus officio* so long as anything remained to be done to remove the danger at that crossing.

Paragraphs ten, eleven and thirteen were apparently intended to be denials of the averments, or some of them, in the alternative writ. But as denials they are insufficient. Neither of them denies any fact directly. The tenth, for instance, denies not the fact of the resolutions but their purpose, which can be made out only by argument. So too the eleventh. An argumentative denial is no denial. Viewed in this way the demurrer to these paragraphs was properly sustained. We do not, however, rest our decision on this ground alone. "If any pleading mistakes the effect and

purpose of a statute upon which a party relies, the adverse party, in demurring to such pleading, does not admit the correctness of the construction, or that the statute imposes the obligation or confers the rights which the party alleges." *Pennie* v. *Reis*, 132 U. S. R., 470. " A demurrer does not admit the accuracy of an alleged construction of an instrument, when the instrument itself is set forth in the pleading or a copy annexed, against the construction required by its terms ; nor the correctness of the ascription of a purpose to the party when not justified by the language used." *Dillon* v. *Barnard*, 21 Wall., 437. The eleventh paragraph is somewhat more full in its statement than the tenth. It says that at the time when the order of the commission took effect— namely, thirty days after the new depot was occupied by the railroads—the said New York & New England Railroad Company " did not have any such surface tracks anywhere within the limits named in said order as could in any event have anything to do with the intent and purpose of the said resolutions of the General Assembly, under the plans adopted either by said board of commissioners or by the plaintiffs assuming to act as such." A demurrer to such pleading does no more than refer to the court the construction of the legislative resolutions.

It appears from other parts of the record that before the expiration of the thirty days named in the order the defendant had removed its surface tracks from the south side to the north side of Asylum street, and that such remaining part of its surface tracks as is within the limits fixed by the order it had at all times refused to remove. It is to secure the removal of this remaining portion of surface tracks that the mandamus is asked for in this application. The defendant insists that the legislative intent and purpose authorized the commission to direct the removal of surface tracks only between the lines of Asylum street. The general question argued under these paragraphs is whether or not the commission exceeded the powers conferred upon it by the legislature in making the order, so far forth as it relates to that portion of the defendant's tracks not removed. A compari-

son of the order with the resolutions shows—and it is admitted—that the tracks to which the order relates are within the territorial limits over which authority is given to the commission. It also appears—and is not denied—that it is within the terms of the power given to the commission, that is, " to make any and all orders relating to said improvement and to all matters and things appertaining thereto which they may deem necessary and proper, in the same manner and to the same extent that the General Assembly itself might do and direct." The legislature by the use of this language evidently considered it essential to the fulfilment of its entire scheme that the power of its commission should be as paramount anywhere outside the bounds of Asylum street, if within a half mile on either side, as between the lines of that street. In the 54 Conn., at page 295, cited above, it is said that " the legislative act in scope and purpose concerns the protection of life ; " " that it was an exercise of the governmental power and duty to secure a safe highway." Whatever then would remove danger would promote that purpose. A surface track anywhere near a passenger depot over which cars at any time might be moving would be dangerous. The removal of such tracks would tend to promote safety. And we have seen that a safe highway at the Asylum street crossing required a safe approach to the depot from the street and a safe egress to the street from the depot. Examining the resolutions in the light of the decision of this court we think the order made by the commission was within the legislative purpose. These considerations show, *primâ facie* at least, that the order was within the power and jurisdiction of the commission.

But the commission established its own jurisdiction. Their record is that " this board finds that the completion of said improvement as hereinbefore ordered, the carrying out of the designs and instructions of the legislative acts creating and regulating this board, and public convenience and necessity, all require, and this board deems it necessary and proper to order and decree," etc., etc.; and accordingly it did order and direct the surface tracks to be taken up, as is set

forth in the alternative writ, the controlling jurisdictional fact being that the commission did deem it " necessary and proper " to make the order. It is true that jurisdictional facts found by any board or other tribunal exercising only a limited statutory authority are open to be questioned in any other court. But such a finding is always taken to be true unless shown to be untrue. If the jurisdictional facts so found are made to appear *primâ facie* to be true, they are always held to be true until some extrinsic facts and circumstances which destroy such *primâ facie* appearance are alleged and proved. No such facts are shown in this return.

The thirteenth paragraph, so far as it denies the authority of the commission to make the order of December 20th, 1888, and so far as it denies any allegation in the alternative writ, has been sufficiently considered. Another part of this paragraph " denies that the plaintiffs were legally constituted as a board of commissioners authorized to act as such under said resolutions of the General Assembly." This is a denial of a legal conclusion. It denies that the plaintiffs were *legally* constituted as a board of commissioners. The assertion or the denial of a legal conclusion, without showing the facts which establish or destroy such conclusion, means nothing. A demurrer to such a pleading must always be sustained. We might stop here. It is open to conjecture that the defendant intended to say that because Mr. Wheeler acted as one of the commission in passing the order when he was not one of the persons named in the resolutions as a member of the commission, therefore the commission was not legally constituted. But the resolutions provide that in case Mr. Robinson should refuse to act a substitute may be chosen, and provide in what way. The record discloses that Mr. Robinson did refuse to act as a member of the commission, for he appeared in another capacity. It also appears from the record that Mr. Wheeler acted as one of the commission with the acquiescence of the other members. We think the court was authorized to presume that he acted legally. Even if the court was wrong in so presuming, the order was not thereby made invalid, for the resolutions further provide

that the decision or action of the board of commissioners had by a majority thereof should in all matters appertaining to its duties have the full force and authority of, and be regarded as, the decision and action of the board.

What we have said under the motion to remove the cause to the Circuit Court of the United States fully answers the fourteenth paragraph of the return. There is nothing in the legislative resolutions in violation of the constitution of the United States. The demurrer to the fifteenth, sixteenth and seventeenth paragraphs was properly sustained upon the authority of *Woodruff* v. *Catlin*, *supra*. The demurrer to the eighteenth paragraph is sustained on the ground that forbidding the defendants to use their property in a way that would be dangerous to the lives of others is not a taking for public use. The prohibition of the use of property in a particular way, whereby its value becomes depreciated, is a very different thing from taking it for public use. To the nineteenth, because the legislature itself decreed the apportionment of the expenses. What we have said under the first paragraph of the return is a sufficient disposition of paragraphs twenty and twenty-two. Paragraph twenty-one is answered by *Woodruff* v. *Catlin*, *supra*. And see *Mugler* v. *Kansas*, 123 U. S. R., 623. The twelfth paragraph alleges only that the defendant would be subjected to great expense if the order of the commission should be carried out. The resolutions and the order being valid, and being required for the protection of life, the circumstance that its enforcement would subject the defendant to expense is not any reason against its legality. That is an argument to be addressed to the commission. So far as we have been able to examine we find no reason why the commission might not take any special damage to the defendant, or to the city of Hartford, or to the New York, New Haven & Hartford Railroad Company, into account as a part of the "entire expense," and determine what proportion each should bear, subject only to the limitation fixed in the resolutions.

There is no error in the judgment appealed from.

In this opinion LOOMIS and THAYER, Js., concurred.

CARPENTER, J. (dissenting.)   I am clearly of the opinion that that portion of the order which is sought to be enforced by this suit is not within the jurisdiction of the commissioners.   The order is divisible.   It relates to tracks on Asylum street, on Church street, and on the defendant's own land. It is not denied that they had jurisdiction to order the tracks removed from Asylum street; it is denied that they had any power to order the other tracks removed.   When I speak of the order, it will be understood that I mean the order as applied to the other tracks alone; and when I speak of tracks, that I mean those other tracks only, as they are the only ones now in controversy.

The question of authority is raised by the motion to quash, which should have been granted, for the writ fails to show a *primâ facie* case, inasmuch as no facts are alleged which bring the tracks within the power conferred upon the commissioners; and it appears by the statute, which by reference is made a part of the writ, that the authority granted did not embrace them.   This question is distinctly raised by paragraph fourteen of the motion to quash, and the third reason of appeal assigns the denial of that motion as one of the errors complained of; so that sustaining the demurrer on technical questions of pleading does not meet and dispose of this question.   The error of the court, if there was one, still remains.

What was the object or purpose of the order?   What reason is now given for removing the tracks?   The reason for removing the tracks from Asylum street is apparent. The commissioners tell us in the order that the completion of the improvement requires it.   The order seems to give the same reason for removing the other tracks; but manifestly that cannot be, for the improvement has been completed for more than a year and the tracks are not removed. If we may speculate, we may suppose that the order to remove the tracks from Church street had for its object the removal of another grade crossing.   But the commissioners

do not say so. On the contrary they give another and quite different reason. As to the tracks not on any street, but on the defendant's own land, what reason has been or can be given for removing them? The record is silent; the plaintiffs' attorneys are silent; the opinion of the court is silent; and I am compelled to be silent, for I am unable to imagine a possible reason for it.

I refer to these things merely for the purpose of calling attention to a peculiarity of this case; a large portion of what is required to be done is without any apparent reason.

If we look at the writ we find that it is alleged that the defendant has and now maintains certain of its surface tracks within one half mile of Asylum street, and within three hundred feet of the center line of the tracks; that the acts of the legislature authorized the commission to order their removal; that it has ordered their removal; and that the defendant refuses to obey the order. There is no allegation that their removal is necessary to the completion of the Asylum street improvement, or to the separation of grades at Church street, or that they in any wise affect the commissioners or any duty devolving upon them.

Surely they would not have us infer that they ordered their removal simply because they believed that they had the power to do so. But I insist that they have no such power. The power contended for is special, unusual, and extraordinary; in the language of the plaintiffs' brief, "such delegations of power as are not to be found elsewhere in our public or private laws." Such power is not to be presumed or inferred. If it exists at all it is because it is granted by the legislature, either expressly or by necessary implication. To this proposition all will agree. If granted it is in the statute in express terms or clearly included in some general grant of power. One clause in the act—"may require any or all of the present tracks within said limits to be taken up and removed," if detached from its connection and taken in an unqualified sense, apparently justifies the action of the commissioners. Thus interpreted it grants arbitrary and despotic power to order the removal of every

track on either road within one half mile of Asylum street, with or without reason. It is not claimed that the legislature intended any such grant of power. It is a power which the legislature itself does not possess. It is not only against natural right, but is clearly obnoxious to the federal and state constitutions. Obviously that clause cannot be taken in an unqualified sense. Absolute in terms, it is nevertheless limited and qualified by the context and the subject matter. There are four distinct grants of power in the same sentence, of which that is the last. The others are (1) to carry the railroad over the street, (2) to change the grade of the street, (3) to order new lines of railroad. The last three are subsidiary to the first; the second expressly so— " to the end aforesaid." The sense requires that the third and fourth should be in like manner qualified. There can be no other rational construction. I come then to the other branch of the inquiry, is the removal of these tracks essential to the separation of the grades at Asylum street? As before remarked, no fact is alleged showing such necessity, no such fact appears in any part of the record, and I can safely assert that no such fact exists; because the fact is patent that the Asylum street crossing has been abolished, and the street rendered as safe as it can be, for more than a year, and during all that time the tracks in question have been in daily use. Counsel for the plaintiffs do not in their brief or argument specify any object or purpose outside of Asylum street which is claimed as an incident to the separation of the grades at that street. In discussing the question of authority they speak of certain powers expressly conferred; and then add vaguely, in their own language—language not found in the statute—" and guard the public safety and convenience in every direct and incidental thing." Again they say:—" It is fair to notice that the removal of these tracks by the two railroad companies, leaving the viaduct only for the exclusive use of the railroads, and opening the approaches to the station and the highways free to carriage use, is not only incidentally, but integrally, included in the problem committed by the state to the commission." Now

this may have some application to the improvement on Asylum street, but it is not explicitly claimed that it applies to anything else, although the brief enlarges upon the supposed danger at Church street, while the record is silent on that subject. Counsel then fall back upon the express authority in the statute, as follows:—" The act gives the commission complete jurisdiction over the railroads for a distance not exceeding one half a mile each side of Asylum street, and within three hundred feet of the center line of the present tracks of the railroads, *and may require any and all of the present tracks to be taken up and removed.*" The italics are theirs. That is the only part of the statute which can be made to justify the order as now sought to be enforced; and that, as I have shown, can only be done by taking it in an absolute sense, which is clearly contrary to the intention of the legislature. Apparently not satisfed with the argument as it then stood, reference is made to the finding of the commission as expressed in the order, "that the completion of said improvement as heretofore ordered, the carrying out of the design and instructions of the legislative acts creating and regulating this board, and public convenience and necessity all require," etc., as conclusive. Conclusive of what? If by that is meant that the finding of a fact within its jurisdiction is conclusive as to that fact, I agree with them. Here again I desire to call attention to the divisible nature of this order. The commission clearly had jurisdiction over the tracks on Asylum street and its finding as to them is a finding of a fact within its jurisdiction. But the question is as to jurisdiction over tracks outside of Asylum street, and over matters not connected with the Asylum street crossing. If such matters are in fact outside of the resolutions under which the commission acted, counsel admit that the finding is not conclusive.

That they are extraneous matters cannot be doubted. The commission did not stultify itself by finding that the Asylum street improvement required the removal of the tracks between Asylum and Church streets; or of the tracks from Church street; and counsel make no such absurd claim

directly.   But suppose there is an explicit claim and finding
to that effect; such finding is of no consequence, for it is a
jurisdictional matter and binds no one.   *Sears* v.   *Terry*, 26
Conn., 273.   The opinion of the court seems to have gone
far beyond the suggestion of counsel.   It announces the
broad doctrine that "the commission itself establishes its
own jurisdiction."   With all deference I think the court
confounds things that differ.   Jurisdiction is one thing;
exercising or assuming to exercise jurisdiction is quite an-
other.   The latter presupposes the existence of the former.
The former is never the creature of the latter.   Jurisdiction
is the creature, not of a tribunal, not of any fact which it may
find, nor of anything which it may do, but of some superior
power.   The proposition that the commission established
its own jurisdiction assumes that the legislature created the
commission with power to determine and define its own
jurisdiction; whereas it has done nothing of the kind.   It
created the commission and prescribed definitely its powers
and duties.   Hence it is to the acts of the legislature, and not
to the acts of the commission, that we are to look for its au-
thority.   There is but one way in which the commission can
establish its own jurisdiction, and that is by usurpation.
Jurisdiction thus established vanishes as soon as it is ques-
tioned.

It may be claimed that nothing more is meant than that
the commission found certain jurisdictional facts which show
that it is proper for it to exercise the power conferred.   If
that is the meaning it is singularly unfortunate that it was
not expressed in different language.   But assuming that to
be so, the inference drawn from it, that the finding is *primâ
facie* proof of the fact thus found, and must stand until
shown to be untrue, is of no avail; for there is no express
finding that the Asylum street improvement requires the
removal of the tracks now in question; and any implication
to that effect is effectually disproved by the facts stated in
the eleventh paragraph of the return, which are admitted by
the demurrer, and which are as follows:—"The new depot
at Asylum street was first occupied and used by the defend-

ant on the first day of July, 1889. At the expiration of thirty days from that time the defendant did not have, nor has it at any time since said first day of July had, any surface tracks across or upon said Asylum street, or any such surface tracks anywhere existing within the limits named in said order of December 29th, 1888, as could in any wise affect the safety or convenience of travel upon any railroad or on Asylum street, or as could affect the separation of the grades of the railroad and Asylum street, or the operation of any railroad across Asylum street, or as could in any event have anything to do with the execution of the intent or purposes of the resolutions." Now if the finding of the commission cannot be regarded as a finding that the removal of all the tracks embraced in the order was essential to the completion of the Asylum street improvement, (and I think it cannot,) then the finding has no bearing upon the case; if it can be so regarded, and that the fact so found is to be taken as true until facts are alleged and proved which show it to be untrue, how, in the face of that portion of the return quoted above, can it be truthfully said that " no such facts are shown in the return?"

But why look to the doings of the commissioners for their authority? Is it because it is not elsewhere to be found? If conferred by statute that is enough; if not, the doings of the commissioners are of no importance. They do not tend to show any implied or incidental power; therefore their finding neither strengthens, nor is it strenghtened by, any argument in support of such power. The argument drawn from the finding must stand or fall by itself. If insufficient, as it clearly is, it is like placing another cipher in a column of ciphers to be added; the result is but a cipher. Resorting to such an argument virtually admits that the power contended for does not otherwise exist, and only serves to betray the weakness of the cause. My conclusion is, (and from that conclusion I can see no escape,) that the power to order the removal of the tracks now in question is not expressly granted in the statute, is not given in any general grant of power, and is not given as an incident to the one

only purpose of the legislature—the separation of the grades on Asylum street.

Any other conclusion, especially any construction that will justify this proceeding, encounters grave constitutional objections. The theory of the plaintiffs, as disclosed in the writ, is, that the power to order the tracks removed is absolute. That theory seems to have been adopted by the court below and to have received the approval of this court. Thus construed, the literal terms of the statute justify the order; but the order, when enforced, clearly violates the federal and state constitutions. The case shows, (paragraph twelve of the return,) that the "tracks are owned and operated by the defendant as a part of its railroad, are within its location as legally established, and within one hundred feet of the old center line of its location, are all laid upon land owned by the defendant in fee, are necessary for the enjoyment and profitable use by the defendant of the land, and cannot be taken up or removed, as commanded by the order, or as prayed for by the plaintiffs, without doing damage to the defendant in the sum of two hundred thousand dollars." This too is admitted to be true by the demurrer. The fifth amendment to the constitution of the United States provides that no person shall " be deprived of life, liberty or property without due process of law; nor shall private property be taken for public use without just compensation." The constitution of this state contains the same provision in nearly the same language. Art. 1, sections 9 and 11. It requires no argument to show that this order, when enforced, will deprive this defendant of its property, and that the order is not " due process of law." If the action of the commission is attempted to be justified on the ground that the removal of the tracks is necessary to the completion of the Asylum street improvement, or to remove a grade-crossing from Church street, or to accomplish any other public purpose, then it is a taking of private property for public use, which both constitutions prohibit unless just compensation is made therefor. It is true the commission has the power to take land or other property which in its judg-

ment may be necessary or proper to be taken for the purpose of the improvement which may be ordered under authority of the statute; and the act prescribes the manner in which it shall be done. But this clearly is not a proceeding under that statute. No purpose is named for which the land is wanted; there is no description of land or other property proposed to be taken; no party is named for whose benefit the land is required; and the proceedings do not contemplate the appointment of appraisers to estimate damages. It is a mandamus pure and simple. Counsel for the plaintiffs deny that any legal damage will result to the defendant. Thus it clearly appears that there is no intention of having damages appraised in this action.

It is further suggested that it is in the power of the legislature, and also of this commission, to take any property of any party concerned in causing danger to life, and to any extent needed, without compensation; and *Dunham* v. *City of New Britain*, 55 Conn., 378, is cited as sustaining that position. I will not discuss that matter, as it is not properly before us. One thing is certain, the legislature has not yet taken that ground in this matter, and has not authorized the commissioners to do so. It has expressly authorized the commission to take any railroad property or highway that might be needed for the purpose of the improvement, and have the damages appraised as required by law. And in apportioning the whole cost of the improvement the commission is in terms authorized to include land damages. I can discover in this statute no authority in the commission to take the land of either railroad company, or of the city, for the purpose of the improvement, without first having it condemned and appraised as the law requires.

It is further suggested that it will be safe to leave this matter to the judgment and discretion of the commission in the final adjustment of the whole matter. Without questioning at all the eminent fairness and wisdom of the commission, I will only say that the matter of appraising damages for land taken for this improvement has not been intrusted to it by the legislature, as it has expressly provided a different tribu-

nal for that purpose; and that this defendant has a legal right, which cannot justly be denied it, to have the legislative tribunal appraise the damages rather than this commission. The former is in due course of law; the latter certainly is not. On the face of the proceeding, therefore, it is a taking of private property without just compensation.

In this opinion TORRANCE, J., concurred.